UNITED STATES of America

v.

**Myrtle D. WASHINGTON, Appellant.**
**(Two cases)**

Nos. 82–1591, 82–1593.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 6, 1983.

Decided April 15, 1983.

As Amended April 15, 1983.

John W. Karr, Washington, D.C. (appointed by this Court), for appellant.

Mary A. McLaughlin, Asst. U.S. Atty., Washington, D.C., of the Bar of the Supreme Court of Pennsylvania, pro hac vice, by special leave of the Court with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell, John R. Fisher and Deborah A. Robinson, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee. Donald J. Allison, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before ROBINSON, Chief Judge, MacKINNON and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Appellant challenges the validity of her convictions following two indictments for making false statements to secure United States passports, in violation of 18 U.S.C. § 1542 (1976). Several arguments are proffered in support of her appeal. We find some merit in only one, involving her right under Fed.R.Crim.P. 43(a) to be present during the impaneling of the jury, which was violated when she was excluded over her express objection from a part of the confidential voir dire of several prospective jurors conducted at the bench. Nevertheless, we find that the violation constituted only harmless error and affirm the judgments of conviction.

I.

On April 10, 1981, appellant Myrtle D. Washington presented three passport applications to a passport examiner in the Washington Passport Agency in the District of Columbia. The passport applications were for three minor children of the appellant's paramour, Donald Morris Fuller. Forged Maryland birth certificates listing appellant as each child's natural mother were sub-

mitted along with the applications, and as identification appellant submitted her own passport issued in 1977. Appellant swore that each of the applications was true and signed the applications in the presence of the passport examiner. Because the birth certificates submitted with the passport applications looked suspicious, the staff of the passport agency decided to investigate their authenticity. A check of official Maryland records disclosed that no one was born in Maryland with the children's names during the years in question. On September 1, 1981, appellant was indicted in No. 81–375 on three counts of violating 18 U.S.C. § 1542 (1976),[1] which prohibits the wilful making of false statements in a passport application. After a jury trial in the United States District Court for the District of Columbia, appellant was found guilty on all three counts.

Before No. 81–375 went to trial, appellant was indicted in No. 82–42 for another violation of section 1542, this time in connection with a passport application made on December 18, 1981, for appellant's own use. In this instance appellant presented as her own a Chicago, Illinois, birth certificate bearing the name of Sharon F. Howard, and in the presence of a passport examiner she signed the passport application and swore to the truth of its contents. Appellant also swore that she had never been issued a passport before. After a jury trial before the same court, appellant was also found guilty of this charge.

On May 14, 1982, appellant was sentenced on each of the three counts in No. 81–375 to consecutive one to four year terms of imprisonment, with all but six months of the prison sentences suspended subject to two years of probation. In No. 82–42 appellant received a one to three year sentence to run consecutively to the sentences in No. 81–375. Execution of this sentence was suspended subject to two years' probation,

---

1. 18 U.S.C. § 1542 (1976) reads as follows:
 Whoever willfully and knowingly makes any false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or

the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws; ...
 Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

however. Appeals in the two cases were consolidated because of common issues.

## II.

Appellant submits that several rulings by the district court on defense motions or objections deprived her of a fair trial. Regarding No. 81–375, appellant contends that she should have been allowed to present evidence of her motives in making the admittedly false passport applications; that the jury should have been instructed of its right to acquit her notwithstanding her guilt-in-fact, if the jury found her conduct morally blameless; that her claims of selective prosecution should have been decided by the jury, not the trial court; that discovery relating to the claim of selective prosecution was improperly restricted by the trial court; and that the scope of voir dire of the prospective jury was improperly restricted. She asserts that the conviction in No. 82–42 should be overturned because, as in No. 81–375, discovery relating to the selective prosecution claim was improperly limited and that the claim should have been decided by the jury; because her right to be present during voir dire, granted by Fed.R. Crim.P. 43(a), was violated when a portion of the voir dire was conducted at a bench conference out of her direct observation and range of hearing; and because adverse pre-indictment publicity affected the proceedings of the grand jury that indicted her.

### A. *Evidence Relating to Motive in No. 81–375*

▉ Appellant argues that since 18 U.S.C. § 1542 (1976) requires the government to show that the defendant "willfully" and "knowingly" made a false statement in a passport application "with intent to induce or secure the issuance of a passport," the mental state of the defendant is put directly in issue. Citing *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), to the effect that the presence of the word "willfully" in the statute re-

quires the government to prove that the criminal act was done with a "bad purpose," *id.* at 101, 65 S.Ct. at 1035, she argues that she should have been allowed to introduce evidence of her motives in committing the crime to rebut a finding by the jury that she possessed the requisite criminal intent. In particular, appellant desired to introduce evidence relating to her affiliation with the Original African Hebrew Israelite Nation of Jerusalem, a group commonly known as the Black Hebrews,[2] her personal relationship with Donald Fuller, a Black Hebrew leader, and Fuller's manipulation of her affection and her dependency upon him.

We affirm the district court's refusal to permit appellant to introduce such evidence in No. 81–375 relating to her motives. Such evidence of motive, as the district court ruled, is not relevant to or probative on the issue of intent as that word is used in section 1542. This contention was settled in *United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976), in which the Court held that the requirement of an evil motive suggested in *Screws* is met by proof merely of "a voluntary, intentional violation of a known legal duty." *Id.* at 12, 97 S.Ct. at 23. Also to the point is *Browder v. United States,* 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862 (1941), which construed the words "knowingly" and "willfully" in section 1542 to mean " 'deliberately and with knowledge'." *Id.* at 341, 61 S.Ct. at 603. Proof of a good motive thus is not probative on the issue of such intent. The cases cited by appellant, *United States v. Wasman,* 641 F.2d 326 (5th Cir.1981), and *United States v. Cox,* 593 F.2d 46 (6th Cir.1979), are inapposite. In each case the defendant had used an alias in his passport application and asserted a common law right to adopt an alias for non-fraudulent purposes as a defense to the prima facie violation of section 1542. Evidence of motive was held admissible in those cases, not because such evidence negatived the specific intent that must be estab-

---

**2.** The Original African Hebrew Israelite Nation of Jerusalem is a small religious group which believes that its members are descendants of the original Hebrews. In addition to adopting

Jewish customs, many members have emigrated to Israel, settling in two small towns in the Negev Desert in southern Israel. *See* Brief of Appellant at 4, 36–37.

lished to prove a violation of section 1542, but because the evidence of motive established that the defendants may not have made a *false* statement. Because appellant did *not* contest the falsity of her passport application, the evidence she proffered on motive was properly ruled irrelevant.

### B. *Instructions on Jury Nullification in No. 81–375*

At the close of final argument in the trial of No. 81–375, appellant requested that the jury be instructed that it had the right to acquit her if it found her conduct not culpable or morally blameworthy under prevailing community standards. Such an instruction, appellant argues, is necessary to inform the jury of its inherent power to acquit notwithstanding a defendant's factual guilt, in order to properly control the arbitrary exercise of this prerogative.

It cannot be gainsaid that juries can abuse their power and return verdicts contrary to the law and instructions of the court, and thus nullify the criminal law, but courts generally have refused to give such an instruction to the jury. In federal courts the issue was settled in *Sparf and Hanson v. United States,* 156 U.S. 51, 102, 15 S.Ct. 273, 293, 39 L.Ed. 343 (1895), in which the Supreme Court rejected an argument similar to appellant's. *See also United States v. Dougherty,* 473 F.2d 1113, 1130–37 (D.C.Cir.1972) (reviewing history and propriety of federal rule). A jury has no more *"right"* to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power. Any arguably salutary functions served by *inexplicable* jury acquittals would be lost if that prerogative were frequently exercised; indeed, calling attention to that power could encourage the substitution of individual standards for openly developed community rules. *Cf. United States v. Moylan,* 417

F.2d 1002, 1009 (4th Cir.1969) (Sobeloff, J.), *cert. denied,* 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970) (jury nullification instruction risks anarchy). In fact, only two states, Indiana and Maryland, might permit an instruction on jury nullification. *See United States v. Moylan,* 417 F.2d at 1007 n. 17. Appellant's assertion that an instruction on jury nullification is the "best assurance against its arbitrary exercise," Brief of Appellant at 27, thus has no support in the law and flies in the face of common sense. In light of the foregoing, the district court's absolute refusal to instruct the jury as requested was entirely proper.

### C. *Selective Prosecution*

Another ground for reversal in Nos. 81–375 and 82–42 asserted by appellant is that the government impermissibly singled her out for prosecution on the passport fraud charges because of her religious beliefs as a member of the Black Hebrews. To establish such a claim, she had to prove that (1) she was singled out for prosecution from among others similarly situated and (2) that her prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification. *United States v. Mangieri,* 694 F.2d 1270, 1273 (D.C.Cir.1982); *Attorney General v. Irish People, Inc.,* 684 F.2d 928, 932 (D.C.Cir. 1982). The mere exercise of selectivity is not enough, *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962), and even to initiate discovery to prove impermissible motives a defendant must make a colorable showing. *Attorney General v. Irish People, Inc.,* 684 F.2d at 932; *United States v. Diggs,* 613 F.2d 988, 1003–04 (D.C. Cir.1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980).

The trial court permitted discovery after the defendant introduced evidence suggesting a link between United States foreign policy and the Israeli government's efforts to solve problems it believes it has with Black Hebrews already settled in Israel. The trial court directed the government to supply appellant with information demonstrating how many passport frauds were

detected since 1975, how many detected frauds were prosecuted and how many frauds detected or prosecuted involved Black Hebrews. The government produced most of the statistical information requested by the trial court, and following three days of testimony on this question, the trial court ultimately determined that appellant had not proved her claim of selective prosecution. In reaching this finding the trial court concluded that no records existed to demonstrate specifically how many Black Hebrews were involved in passport frauds or the disposition of those cases involving Black Hebrews suspected of committing passport fraud. Any conflicts that may have existed in the testimony on the selective prosecution claim were correctly resolved by the trial court in the government's favor.

 Appellant also argues that the issue of selective prosecution should have gone to the jury and not have been decided by the trial court. On the contrary, the issue of selective prosecution is one to be determined by the court, Fed.R.Crim.P. 12(b)(1); *see United States v. Taylor,* 562 F.2d 1345, 1356 (2d Cir.), *cert. denied,* 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 (1977), as it relates to an issue of law entirely independent of the ultimate issue of whether the defendant actually committed the crimes for which she was charged. *See United States v. Oaks,* 508 F.2d 1403, 1404–05 (9th Cir.1974). In this respect, a ruling on selective prosecution is similar to a ruling on whether outrageous government involvement in a criminal enterprise precludes prosecution of those private citizens involved in the crime. *See United States v. Wylie,* 625 F.2d 1371, 1377–78 (9th Cir. 1980), *cert. denied sub nom. Perluss v. United States,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981); *United States v. Nunez-Rios,* 622 F.2d 1093, 1097–98 (2d Cir. 1980). From the record we see nothing that suggests the trial court was clearly wrong. Fed.R.Civ.P. 52(a); *see United States v. Wilson,* 639 F.2d 500, 503 & n. 2 (9th Cir. 1981); *see also United States v. Bradshaw,* 515 F.2d 360 (D.C.Cir.1975). Indeed, it appears that the court more than adequately

protected appellant's right not to be improperly singled out for prosecution. Accordingly, we affirm the trial court's ruling on appellant's selective prosecution claim.

D. *Scope of Voir Dire Permitted in No. 81–375*

 During voir dire in No. 81–375 appellant's counsel requested that prospective jurors be examined for their knowledge and views concerning the Black Hebrews. The district court limited defense counsel to a single question asking whether any prospective jurors had heard of the Black Hebrews. Only one prospective juror answered affirmatively and was excused from the panel for cause. Appellant argues that this isolated and unexplained reference to the Black Hebrews may have confused the jury and aroused suspicions that the appellant was associated with a fringe religious group with peculiar beliefs. Consequently, she argues a wider range of inquiry should have been permitted during voir dire to ascertain prospective juror attitudes towards the Black Hebrews' beliefs and practices, in order to determine whether any reference to the group during trial might prejudice a juror against the defendant merely because of her membership in the Black Hebrews.

It is well settled that "the trial judge is vested with 'broad discretion' in the conduct of voir dire—both as to the mode and manner of proceeding . . . and as to the range of questions put to the prospective jurors . . . ." *United States v. Haldeman,* 559 F.2d 31, 64–65 (D.C.Cir.1976) (quoting *United States v. Robinson,* 475 F.2d 376, 380 (D.C.Cir.1973) (citations omitted)), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *see* Fed.R.Crim.P. 24(a). A successful attack on the judge's handling of voir dire requires the appellant to show not only that he abused his broad discretion, but that she was prejudiced thereby. *United States v. Haldeman,* 559 F.2d at 65. Since the only prospective juror with any prior knowledge of the Black Hebrews was excused from the panel and the name of the group was never mentioned during the trial, the record presents no basis to support a

claim of prejudice. The voir dire as conducted by the trial judge was well within his broad discretion, since it is hardly a profitable use of judicial time to pursue a line of questioning about a group of which only one prospective juror was aware and whose name was not again mentioned during the trial. Moreover, the line of inquiry proposed by the appellant was irrelevant under the trial court's ruling on evidence of motive.

### E. Conduct of Voir Dire in 82–42

More troubling is the trial court's handling of the question during voir dire in No. 82–42 of the prospective jurors prior involvement in the criminal justice system.[3] Trial Transcript (Tr.) at 132–181. While this part of voir dire was first put to the panel of prospective jurors in open court, further inquiry of the thirteen jurors who answered affirmatively was taken at the bench, in the physical presence but out of the direct observation and hearing of the appellant. Although appellant's counsel participated in this bench examination, after six of the thirteen jurors had been interrogated, her counsel made a specific request to permit her participation. Appellant's counsel cited no supporting authority when arguing for the request, which was refused by the trial court. Consequently, she argues now that because she was unable to observe prospective jurors' demeanor and hear their voices in answering this question, her ability to exercise fully her peremptory challenges was impaired. She urges us to vacate her conviction in No. 82–42 as a result of this asserted violation of Fed.R. Crim.P. 43(a),[3] and order a new trial.

The procedure employed by the district court apparently traces its beginnings to a suggestion this court made in *United States v. Ridley,* 412 F.2d 1126, 1128 (D.C.Cir.1969). In that case the trial court examined prospective jurors having prior contact with the criminal justice system in open court

rather than at the bench. The defendant in *Ridley* suggested that this procedure affected the attitudes of other prospective jurors and created a climate prejudicial to one accused of a crime. *Id.* While affirming the conviction, we suggested that the district court look for ways to prevent any possible prejudice arising from this part of voir dire. *Id.* The procedure in No. 82–42 by which the trial judge examined prospective jurors having prior contact with the criminal justice system at the bench and out of the hearing of other prospective jurors resulted from this suggestion in *Ridley:* we approved of this procedure in *United States v. Caldwell,* 543 F.2d 1333, 1345 n. 42 (D.C. Cir.1974), *cert. denied,* 423 U.S .1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), and *United States v. Bryant,* 471 F.2d 1040, 1044–45 (D.C.Cir.1972), *cert. denied,* 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973). These two cases only approved this handling of voir dire with respect to the possible prejudicial effect to the defendant of the examination because of its effect on prospective jurors, however, and did not consider the issue of the defendant's right to participate in the bench examination.

As originally promulgated, rule 43 was intended to be a restatement of existing law governing the necessity of a defendant's presence during criminal proceedings. *See* 8B MOORE'S FEDERAL PRACTICE ¶ 43.01[2]. Rooted in the confrontation clause of the Sixth Amendment, *Dowdell v. United States,* 221 U.S. 325, 330, 31 S.Ct. 590, 592, 55 L.Ed. 753 (1911), the due process guarantee clause of the Fourteenth Amendment, *Bustamante v. Eyman,* 456 F.2d 269, 272–74 (9th Cir.1972), and a common law right of presence, *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), rule 43 implements "[a] leading principle that pervades the entire law of criminal procedure ... that, after indictment ..., nothing shall be done in the absence of the prisoner." *Lewis v.*

---

**3.** Fed.R.Crim.P. 43(a) reads as follows:

 (a) *Presence Required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

*United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892). Though the right to be present is not absolute, *Illinois v. Allen,* 397 U.S. 337, 342, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970), the defendant's presence is fundamental to the basic legitimacy of the criminal process. *Cf. Lewis,* 146 U.S. at 372–73, 13 S.Ct. at 137 (dictates of humanity require defendant's presence). Arising as it does in part from the Sixth Amendment, we think the defendant's right to be present is an essential concomitant of a defendant's right to effective assistance of counsel. *Cf. Faretta v. California,* 422 U.S. 806, 819–21, 95 S.Ct. 2525, 2533–34, 45 L.Ed.2d 562 (1975) (6th Amendment grants the defendant the right to make his own defense). Certain aspects of a criminal trial demand a defendant's knowing participation during that stage of the proceedings. *E.g., Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976) (entering guilty plea). While we do not think the right to be present during voir dire is on the same level as, for example, entering a plea or the presentation of evidence, the right of the defense to exercise peremptory challenges, which ordinarily is exercised by counsel, can require direct consultation with the defendant and something more than second hand descriptions of the prospective jurors' responses to questions during voir dire. Peremptory challenges can be arbitrary and inexplicable; consequently, a defendant who requests the court to permit him to participate should be allowed to obtain as much first hand information as feasible to facilitate his ability to participate in the selection of a jury.

▪ Rule 43 recognizes this concern as well. Though rule 43 does not define presence, the rule distinguishes between circumstances where a defendant's presence is required, see Fed.R.Crim.P. 43(a), and circumstances where a defendant need not be present, see Fed.R.Crim.P. 43(c). For instance, a defendant's presence is not re-

quired when issues of law are being discussed with the court, Fed.R.Crim.P. 43(c)(3), since defendant's counsel can adequately protect the interests covered by rule 43. But, because the interests served by the rights of confrontation and effective assistance of counsel may require knowing participation by the defendant to be fully exercised, part (a) of rule 43 requires the defendant's presence at most phases of a criminal proceeding. Since the exercise of peremptory challenges also requires knowing participation, there is little doubt that under rule 43, the appellant had a right to hear that part of the voir dire conducted at the bench after counsel made his request. It was error to exclude her from the examinations of the last seven jurors conducted at the sidebar. *See United States v. Robinson,* 448 A.2d 853, 855–56 (D.C.App.1982), *reh. denied, Robinson v. United States,* 456 A.2d 848 (D.C.App.1983); *United States v. Brown,* 571 F.2d 980, 985–987 (6th Cir.1978); *United States v. Dioguardi,* 428 F.2d 1033, 1039–40 (2d Cir.), *cert. denied,* 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970). In normal cases the defendant upon request should be allowed to observe and hear juror responses made at the bench. But because it is a right infrequently exercised and usually delegated to counsel, unless a specific request is made for the defendant to participate at bench examinations of prospective jurors, such right shall be deemed to have been waived. When a defendant does request to participate directly, however, the trial judge may, for those jurors whose responses require some degree of confidentiality, conduct that part of voir dire at the bench, in chambers or in some other manner outside the hearing of the other jurors and the public. If other complications arise, such as in cases involving multiple defendants or hardened criminals, they may be handled in other ways,[4] so long as the defendant's right upon request to be present at the bench to observe and hear juror responses is adequately protected.[5]

---

4. When security is a problem or a dangerous defendant or a group of defendants is involved, the right to be present can be satisfied by use of closed circuit television and the opportunity

to consult with counsel, if such procedure is considered necessary by the trial court.

5. We recognize a need to retain some flexibility

Our review of the record indicates that notwithstanding the refusal to recognize appellant's rights under rule 43(a), the error was harmless beyond a reasonable doubt. She was well represented by experienced trial counsel, who participated during the entire bench portion of voir dire and whose assistant took careful notes. Further, only a very limited portion of voir dire was conducted at the bench. *Cf. Robinson v. United States,* 448 A.2d 853, 856 (D.C.App. 1983) (bulk of voir dire conducted at the bench). Appellant was present in the courtroom during the entire time, and while out of hearing of the bench voir dire, had sufficient time to confer with counsel regarding jurors' responses at the bench. Consequently, she was able to compensate effectively for this brief absence from voir dire. The two prospective jurors so examined who eventually served on the jury were interrogated before appellant's counsel made his request, and in view of the uncontradicted evidence of falsity, the question of guilt or innocence was not close. Thus, the record does not indicate any likelihood that appellant's immediate presence at the bench during the brief examination of the seven prospective jurors on one point only would have changed the result of the trial. Under such circumstances it must be concluded that there is no reasonable probability that the error contributed to the conviction or affected any of her substantial rights. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), *rehearing denied, id.* at 987, 87 S.Ct. at 1283, 18 L.Ed.2d at 241; *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23

L.Ed.2d 284 (1969); *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963); *see* 28 U.S.C. § 2111 (1976), *infra* n. 6; *United States v. Alessandrello,* 637 F.2d 131, 141–44 (3d Cir.1980); *United States v. Brown,* 571 F.2d 980, 986–987 (6th Cir.1978).

## F. *Admitting Addie Fuller's Testimony*

As part of the government's case-in-chief in No. 81–375, it presented the testimony of Addie Fuller, mother of the three children for whom the appellant attempted to obtain passports. Appellant asserts that Ms. Fuller's testimony was unduly prejudicial, serving only to raise suspicions that appellant was kidnapping the children. Since appellant offered to stipulate to the true identity of the children, she argues that Ms. Fuller's testimony was unnecessary and its admission an abuse of discretion by the trial court.

We reject this argument. Ms. Fuller's testimony was relevant, as it completed a chain of testimony establishing that the identities of the children in the passport applications were false. Appellant's offer to stipulate to the children's true identity need not have been accepted by the government. *See United States v. James,* 609 F.2d 36, 50 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1028, 63 L.Ed.2d 321 (1980); *United States v. Peltier,* 585 F.2d 314, 324 (8th Cir.1978), *cert. denied,* 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979); *United States v. Cockerham,* 476 F.2d 542, 545 (D.C.Cir.1973). Stipulations as to testimony are frequently not as effective in

in suggesting remedial measures to protect a defendant's rights under Fed.R.Crim.P. 43(a) during voir dire. Although rule 43(a) has constitutional underpinnings, the protective scope of rule 43(a) is broader than the constitutional rights embodied in the rule. *See United States v. Alessandrello,* 637 F.2d 131, 138 (3d Cir. 1980); *United States v. Brown,* 571 F.2d 980, 986 n. 5 (6th Cir.1978). The constitutionally mandated minimum protection a defendant is entitled to under rule 43(a) is fundamental fairness. *See Faretta v. California,* 422 U.S. 806, 816, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975). This minimum of fairness was certainly met in this case, since peremptory challenges are statutory, not constitutional, in origin. *United*

*States v. Alessandrello,* 637 F.2d 131, 141 n. 16 (3d Cir.1980). We stress this only to amplify that our holding is based on rule 43(a), not directly on the Sixth Amendment confrontation clause or the due process guarantee of the Constitution. In light of these underlying concerns and the fact that the practice of the trial court in this case stemmed from our suggestion in *United States v. Ridley,* 412 F.2d 1126, 1128 (D.C.Cir.1969), our holding in this case shall operate prospectively from the date of this opinion. *See Johnson v. New Jersey,* 384 U.S. 719, 731–32, 86 S.Ct. 1772, 1779–80, 16 L.Ed.2d 882 (1966); *Linkletter v. Walker,* 381 U.S. 618, 636–39, 85 S.Ct. 1731, 1741–43, 14 L.Ed.2d 601 (1965).

communicating facts to the jury as in-court testimony, and the government has a large measure of discretion in deciding to accept or reject an offer to stipulate. Since the testimony was relevant, the trial court's decision to admit it is not to be disturbed except for "grave abuse." *United States v. Allen,* 629 F.2d 51, 58 (D.C.Cir.1980); *United States v. Wright,* 489 F.2d 1181, 1186 (D.C.Cir.1973). The record indicates the trial court was sensitive to appellant's concerns, as it carefully limited the scope of Ms. Fuller's testimony and instructed Ms. Fuller to answer only the questions put to her. Thus, the decision to admit Ms. Fuller's testimony was well within the trial court's discretion; moreover, the measures taken by the court adequately protected the appellant from any undue prejudice that could have resulted from Ms. Fuller's testimony.

### G. *Pre-indictment Publicity in No. 82–42*

 On February 7, 1982, shortly before the indictment was handed down in No. 82–42, an article appeared in the *Washington Post* describing the Black Hebrew group and mentioning the appellant as one of the members of the group. A motion to dismiss the indictment for prejudicial pre-indictment publicity was denied. Appellant argues that this was error, and that at the minimum the trial court should have conducted an evidentiary hearing on the motion.

We find no basis in law or fact for overturning the trial court's ruling on the motion to dismiss the indictment. The article does not feature the appellant prominently, making it unlikely the indictment resulted from pre-formed prejudice toward the defendant. Moreover, this argument misconstrues the role of the grand jury, which is an "investigative and accusatorial [body] unimpeded by the evidentiary and proce-

dural restrictions applicable to a criminal trial." *United States v. Calandra,* 414 U.S. 338, 349, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). It is well-settled law "that pre-indictment publicity is an inadequate grounds upon which to base the dismissal of an otherwise properly returned indictment." *In re Grand Jury of the Southern District of Alabama,* 508 F.Supp. 1210, 1213 (S.D. Ala.1980); *see United States v. Tallant,* 407 F.Supp. 878, 889 (N.D.Ga.1975); *United States v. Mitchell,* 372 F.Supp. 1239, 1248 (S.D.N.Y.), *appeal dismissed sub nom. Stans v. Gagliardi,* 485 F.2d 1290 (2d Cir.1973). Since the concern over adverse publicity is its effect on the fairness of the ensuing trial, *see generally United States v. Haldeman,* 559 F.2d 31, 59–64 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977), it was not error to fail to hold an evidentiary hearing concerning the effect of pre-indictment publicity on the grand jury.

### III.

Our review of the arguments advanced by the appellant indicates that the trial court acted well within its discretion in its handling of appellant's two trials, save for the violation of rule 43(a) in No. 82–42, when, after the defendant's request to be present, it held a small portion of the voir dire at the bench out of the hearing and close observation of the defendant. But for reasons set forth above, we conclude that no substantial right of appellant was affected and the violation of rule 43(a) was harmless beyond a reasonable doubt.[6] The judgments of conviction are therefore affirmed.

*Judgment accordingly.*

---

**6.** Rule 52(a) of the Federal Rules of Criminal Procedure provides:

 (a) *Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

28 U.S.C. § 2111 (1976) also provides:

On the hearing of any appeal ... in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.

*See also* 28 U.S.C. § 2106 (1976).