**Temistocles Ramirez de ARELLANO, et al., Plaintiffs,**

v.

**Caspar W. WEINBERGER, et al., Defendants.**

Civ. A. No. 83–2002.

United States District Court, District of Columbia.

Aug. 24, 1983.

Mark R. Joelson, Donald H. Green, Greer S. Goldman and Mark N. Bravin of Wald, Harkrader & Ross, Washington, D.C., for plaintiffs.

Stuart H. Newberger, Asst. U.S. Atty., Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION AND BACKGROUND

The matters presently before the Court are the defendants' motion to dismiss and the plaintiffs' motion for a preliminary in-

junction.[1] Following the hearing on July 26, 1983, the plaintiffs modified their original request for relief, in that they now ask this Court to use its extraordinary injunctive power to order any military operations outside 800 hectares (2000 acres) out of Honduras or back onto the 2,000 acres originally designated in June, 1983, and to declare that no Honduran or U.S. military advisors have a right to even be on the land expropriated. Plaintiffs do not seek any damages.

Prior to the foregoing, plaintiffs' application for a temporary restraining order was denied. Between the time of the hearing on the temporary restraining order and the hearing on a motion for a preliminary injunction, plaintiffs' attorneys went to Honduras to inspect plaintiffs' property and to confer with U.S. Embassy and Honduran officials and others.

On the basis of the entire record herein and the oral argument of counsel for both parties, the Court has determined that the governments' motion to dismiss must be granted for the reasons hereinafter stated and that the plaintiffs' motion for a preliminary injunction must be denied since the court need not reach the merits of that issue.

Defendants have moved to dismiss on the grounds that (1) this action involves non-justiciable political questions, (2) the Court should exercise the doctrine of "circumscribed equitable discretion," and (3) the complaint fails to state a claim upon which relief can be granted. After careful consideration, the Court has decided that this case presents non-justiciable political questions in that any Court is ill-equipped to apply appropriate and proper standards necessary to resolve this type of dispute. Moreover, prudential considerations counsel against judicial intervention in a sensitive military, diplomatic, and foreign policy case reaching the highest levels of a coordinate branch of our government where those considerations are predominate. Accordingly, defendants' motion to dismiss must be granted for the reasons hereinafter stated.

Plaintiffs are an American citizen and six corporations, two Puerto Rican and four Honduran, through which plaintiff Rameriz owns certain property (an agricultural-industrial complex of approximately 14,000 acres located in the Department of Colon, Honduras) which is at the heart of this dispute. Defendants are the United States Secretaries of Defense and State, and the Chief of the U.S. Army Corps of Engineers.

It is undisputed that when American officials are alleged to have first surveyed part of plaintiffs' property for possible use for a Regional Military Training Center, they were under the mistaken belief that the land was owned by the government of Honduras. When they were informed that the property belonged to plaintiff Ramirez, all work stopped. Subsequently, plaintiff Rameriz stated that he would not try to stop the Regional Military Training Center from being built provided that it was restricted to the area originally selected—600 to 800 hectares (1,500 to 2,000 acres) ("Designated Area"). On June 4, 1983, plaintiff Rameriz received and signed a document which purported to expropriate the Designated Area for use as a military installation under the Honduran Law of Forced Expropriation.[2] Plaintiff Ramirez alleges that

---

1. Defendants have also asked for summary judgment pursuant to Rule 56 of the Fed.R. Civ.P., but in view of the ruling herein on their motion to dismiss, it is not necessary to reach or decide the motion for summary judgment. Nor is it necessary to reach the merits of the plaintiffs' motion for a preliminary injunction and declaratory relief.

2. TRANSLATION FROM SPANISH
   There is the National Emblem
   THE ARMED FORCES OF HONDURAS
   HEADQUARTERS

Comayaguela, D.C., June 4, 1983
Mr. Temistocles Ramirez de Arellano
President of the Administrative Council
GANADERA DE TRUJILLO S.A.
Trujillo, Department of Colon
Dear Mr. Ramirez:
The HEADQUARTERS OF THE ARMED FORCES OF THE REPUBLIC OF HONDURAS, in accordance with the provisions of the LAW OF FORCED EXPROPRIATION, by reason of public use and necessity, does herewith notify you that, notwithstanding that the properties under the names MONTECRISTO and SILIN,

subsequent to the "expropriation" by the Honduran government some additional 5,400 acres of his land has been seized for use for the Regional Military Training Center. Defendants assert that the Regional Military Training Center is a Honduran facility and that any U.S. involvement is undertaken at the invitation of the Government of Honduras pursuant to bilateral military assistance agreements.

## THE POLITICAL QUESTION DOCTRINE

■ In certain cases, federal judicial relief must be withheld because of the inappropriateness of the subject matter for judicial consideration: "non-justiciability." *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). In *Baker,* the seminal case in this area, the Supreme Court set forth the factors to be considered by the courts in deciding if a case is nonjusticiable because of the political question doctrine. The factors, summarized by Justice Powell in *Goldwater v. Carter,* 444 U.S. 996, 998, 100 S.Ct. 533, 534, 62 L.Ed.2d 428 (1979) (Powell, J., concurring) lead to "three inquiries: (i) Does the issue involve resolution of questions committed by the text of the Constitution to a coordinate branch of Government? (ii) Would resolution of the question demand that a court move beyond areas of judicial expertise? (iii) Do pruden-

tial considerations counsel against judicial intervention?"

## THE CONDUCT OF FOREIGN AFFAIRS IS CONSTITUTIONALLY COMMITTED TO THE POLITICAL BRANCHES, NAMELY, THE EXECUTIVE AND CONGRESS

The political question doctrine rests upon the structure of our national government, i.e., our tripartite system of government involving separation of powers. *Baker,* 369 U.S. at 210, 82 S.Ct. at 706. The conduct of foreign affairs is committed to the Executive and Legislative branches by Article II, Section 2, and Article I, Section 8, of the Constitution.

Our own Circuit Court has stated that "[t]he fundamental division of authority and power established by the Constitution precludes judges from overseeing the conduct of foreign policy or the use or disposition of military power; these matters are plainly the exclusive province of Congress and the Executive." *Luftig v. McNamara,* 373 F.2d 664, 665–66 (D.C.Cir.), *cert. denied,* 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332 (1967). The controversy here is inextricably connected with our government's relations with Honduras, El Salvador, and the governments of other nations in a strife torn region of Central America. However, the Court does not rest its decision on the "constitutional commitment" factor alone. There are more cogent reasons for the nonjusticiability of this dispute.

---

located in Trujillo, Department of Colon, are owned in fee simple and properly recorded, and furthermore perfectly fulfilling their social function, such lands are necessary for Military Installations.
In view of the foregoing, we wish to inform you as follows:
  a) The change of legal title will be done in accordance with the Law of Forced Expropriation.
  b) The area to be expropriated will be of approximately 600 to 800 hectares (six hundred to eight hundred), according to the topographic map which will be made immediately.
  c) The process of expropriation will begin no later than 30 (thirty) days from this date.
  d) For urgent reasons, because of the public necessity to use the aforementioned lands,

said lands as mutually agreed will be used beginning on June 6, 1983
To: Ganadera de Trujillo, S.A.
  e) I inform you that the President of the Republic has authorized this action and, to these effects, has directed the Solicitor General of the Republic to initiate the corresponding legal proceedings.
    BRIGADIER GENERAL
    s/ illegible
    Gustavo Adolfo Alvarez Martinez
    Chief of the Armed Forces
Received and acknowledged
June 4, 1983
Ganadera de Trujillo S.A.
s/ illegible
T. Ramirez de Arellano
President

## COURTS ARE INCAPABLE OF APPLYING STANDARDS NECESSARY TO RESOLVE DISPUTES OF THIS NATURE

Plaintiffs assert that this case does not involve political questions. Rather, they insist, the issue is "simply whether the defendants, each a United States official, have unlawfully seized a United States citizen's property." Plaintiffs' Opposition to Defendants' Motion to Dismiss at 27. The Court disagrees and cannot accept their simplistic conclusion. To reach the heart of this matter would necessarily involve sensitive and confidential communications between the highest members of the Executive branch and officials of a foreign power that are not judicially discoverable. *See Sanchez-Espinoza v. Reagan,* 568 F.Supp. 596 (D.D.C. Aug. 1, 1983); *Crockett v. Reagan,* 558 F.Supp. 893, 898–99 (D.D.C. 1982), *appeal docketed,* No. 82–2461 (D.C. Cir.1982).

A three-judge constitutional court in the Third United States Circuit stated it well in 1972 when it said the following: "In certain instances, it would surely be conceded, the information necessary to a reasoned judgment should remain confidential. If, because of confidential information, not all the facts could be evaluated, any adjudication of a case whose decision might adversely affect this country's international posture would be imprudent." *Atlee v. Laird,* 347 F.Supp. 689, 702 (E.D.Pa.1972), *aff'd sub nom. Atlee v. Richardson,* 411 U.S. 911, 93 S.Ct. 1545, 36 L.Ed.2d 304 (1973) (mem.).

Plaintiffs place great reliance on *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952), asserting that "the Supreme Court found no obstacle to adjudicating the same issue as that presented here—whether the executive branch had any authority to seize the assets of a United States citizen—despite a far more direct foreign relations concern." Plaintiffs' Opposition to Defendants Motion to Dismiss at 28. In *Youngstown,* the the Supreme Court held that the attempted nationalization of most of the nation's steel mills by President Truman only in the face of a threatened general strike should be enjoined and set aside despite the exigencies of the Korean War and the President's reliance on the "war power." The Court reasoned that the President did not have the power to act under the Constitution and such power had been denied him by Congress in refusing to delegate the authority. Thus, plaintiffs' reliance on *Youngstown* is misplaced. First, the *Youngstown* Court never referred to the political question doctrine in its opinion, nor was the issue argued by the government. Second,

> [A]lthough the executive had argued that the seizures were related to the war power, in essence the President was obtruding into the field of labor relations, an area traditionally assigned to Congress. Even though the nationalization and the Court's injunction of the President's action might have had some, although indirect, effect on the foreign relations of this country, such import, if any, would have been clearly minimal compared to the drastic change which nationalization by the President would otherwise have brought about in the free enterprise system.

*Atlee,* 347 F.Supp. at 701–02.

In contrast to *Youngstown,* the instant case clearly has more direct international implications. Third, the property involved in this dispute is located within the borders of a foreign sovereign nation.

## PRUDENTIAL CONSIDERATIONS COUNSEL AGAINST JUDICIAL INTERVENTION BY THE COURT BECAUSE SUCH INTERVENTION IS COMMITTED TO THE EXECUTIVE AND CONGRESS BY THE UNITED STATES CONSTITUTION

Even in the absence of the Court's inability to apply judicially manageable standards necessary to resolve this dispute, prudential considerations counsel against judicial interference in the case at bar. The President has publicly, and often, stated that stability in Central America is critical to the National Security of the United States. An

**1240**

Executive branch declaration,[3] filed herein, flatly states that even a short term interference with the Regional Military Training Center program could result in serious harm to United States foreign policy interests. Whether the Court, or others, might well disagree with this conclusion is immaterial under the doctrine of judicial prudence and the long line of Supreme Court cases and jurisprudence which counsel against intervention here. Any affirmative relief by the Court would therefore violate a matter constitutionally committed to a coordinate branch of the government. In view of the President's publicly stated commitment to furnish aid to a Central American country, or faction thereof, relief through issuance of an injunction ordering U.S. military personnel from the area would have the potential of embarrassment from multifarious pronouncements by various departments on one question. In addition, "[c]ertainly it is not the function of the Judiciary to entertain private litigation—even by a citizen—which challenges the legality, the wisdom, or the propriety of the Commander-in-Chief in sending our armed forces abroad or to any particular region." *Johnson v. Eisentrager,* 339 U.S. 763, 789, 70 S.Ct. 936, 949, 94 L.Ed. 1255 (1950). Congress and the President exercise broad constitutional power in military matters. *See Schlesinger v. Ballard,* 419 U.S. 498, 509, 95 S.Ct. 572, 578, 42 L.Ed.2d 610 (1975). *Accord Rostker v. Goldberg,* 453 U.S. 57, 70, 101 S.Ct. 2646, 2654, 69 L.Ed.2d 478 (1981); *Orloff v. Willoughby,* 345 U.S. 83, 93, 73 S.Ct. 534, 539, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the army.").

## CONCLUSION

It is regrettable that American courts of law and equity, for the reasons herein stated, cannot grant relief in cases like the instant one because it admittedly arouses sympathy for Mr. Ramirez and his corporations. The Court is confident that his alleged $14,000,000.00 investment will not be overlooked by U.S. government officials and the Honduran government. It is also necessary to note that to be completely credible, Mr. Ramirez ought to exhaust his remedies under Honduran law which he has not done even if it is true as stated by his able counsel that such country has no money. A judgment there might provide a vehicle by which a private relief bill might be obtainable in the Congress of the United States. Finally, the Court notes that when any American citizen, particularly one as sophisticated and knowledgeable as plaintiff Ramirez in business and Latin American affairs over the last quarter century, acquires property in a foreign nation, he does so with foreknowledge that his property may be expropriated and lost. This is a fact of life that plaintiff surely knew or should have known.

An Order consistent with the foregoing will be issued of even date herewith.

---

**3.** Declaration of James H. Michel, Principal Deputy Assistant Secretary of State for Inter- American Affairs filed with Defendants' Motion to Dismiss.