# UNITED STATES of America

v.

# Hyacinthe T. NAPPER.

### Crim. No. 83–164.

United States District Court, District of Columbia.

Nov. 16, 1983.

---

See also, D.C., 574 F.Supp. 1527.

Stanley S. Harris, U.S. Atty., and Timothy J. Reardon, III, Asst. U.S. Atty., Washington, D.C., for the United States of America.

John W. Karr, Washington, D.C., for defendant.

## I. BACKGROUND

CHARLES R. RICHEY, District Judge.

This matter is before the Court on defendant's Motion to Dismiss the Indictment and the government's opposition thereto. Defendant has been charged with supplying false information in a passport application in violation of 18 U.S.C. § 1542 (1976). She contends that her prosecution is part of a concerted government effort to suppress the activities of the Original Hebrew Israelite Nation of Jerusalem, a religious organization commonly referred to as the Black Hebrews.[1] Specifically, Ms. Napper claims

---

1. Beginning in the late 1960's, Black Hebrews immigrated to Israel and claimed to be descendents of the twelve original Hebrew tribes deserving preferential treatment given to Jews under Israeli immigration law. Israeli authorities ultimately concluded that the Black Hebrews were not of Jewish descent and after a time of tense and confusing co-existence, adopted a bi-

furcated policy towards members of the sect. Under this policy, those Black Hebrews already in Israel would be accorded certain legal rights, but no further immigration would be allowed. *Report and Recommendations of the Committee of Inquiry Into the Problem of the Black Hebrews,* at pp. 9–12, 95–111 (Jerusalem, June 1980).

that "she is being prosecuted solely because the government believes that she either belongs to or sympathizes with the [Black Hebrews]". Defendant's Memorandum at p. 1. She seeks dismissal of the indictment pursuant to Fed.R.Crim.P. 12(b)(1) or alternatively an order from this Court directing the government to provide discovery to further establish the claim of selective prosecution.

## II. MOTION TO DISMISS

For almost one hundred years, the federal courts have recognized that it is unconstitutional to administer the law "with an evil eye and an unequal hand so as practically to make unjust and illegal discrimination between persons in similar circumstances...." *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). Since *Yick Wo*, it has become clear that a defendant may not be selectively prosecuted on the basis of such considerations as religion, race or the desire to deter the proper exercise of constitutional rights. *See e.g., Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1967); *Dixon v. District of Columbia*, 394 F.2d 966 (D.C.Cir.1968).

In the recent case of *United States v. Washington*, 705 F.2d 489 (D.C.Cir.1983), the D.C. Circuit had the opportunity to review another § 1542 case involving alleged selective prosecution of a Black Hebrew. The Court noted that in order to establish a claim of selective prosecution, the moving party "had to prove that (1) she was singled out for prosecution from among others similarly situated and (2) that her prosecution was improperly motivated, i.e., based on race, religion or another arbitrary classification. *Id.* at 494; *accord Attorney General v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C.Cir.1982), *cert. denied, Irish People, Inc. v. Smith*, —— U.S. ——, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), *rehearing denied*, —— U.S. ——, 103 S.Ct. 1509, 75 L.Ed.2d 937 (1983).

■ The standard for proving selective prosecution is a "rigorous" one. *United States v. Mangieri*, 694 F.2d 1270, 1273 (1982). "[T]he conscious exercise of some selectivity is not in itself a federal constitutional violation." *Oyler*, 368 U.S. at 456, 82 S.Ct. at 506. "Selectivity in prosecutorial decisions in general is permissible and even necessary." *Id.; United States v. Napper*, 553 F.Supp. 231, 232 (E.D.N.Y. 1982). In addition, the Government enjoys a presumption of having undertaken action in good faith and in a non-discriminatory fashion. *Attorney General*, 684 F.2d at 947; *accord United States v. Falk*, 479 F.2d 616, 620 (7th Cir.1973).

In support of her selective prosecution claim, defendant Napper has brought four items to the Court's attention: a report by the Israeli Committee of Inquiry Into the Problem of the Black Hebrews (hereinafter referred to as the "Knesset Report"), an editorial by William Rasberry that appeared in *The Washington Post* on November 21, 1980, statistical information previously produced by the government in *United States v. Washington*, and a *Washington Post* article concerning a "raid" of a Black Hebrew meeting by federal agents. There is no significant difference between this evidence and the documentary evidence submitted to the trial court in *United States v. Washington*.[2] After reviewing the ·submitted documentation, and after taking testimony for several days, the trial court declined to dismiss the indictment and concluded that the defendant had *not* proven a *prima facie* case of selective prosecution. *United States v. Washington*, No. 81–375, Transcript of Proceedings at 649 (March 26, 1982). Similarly, this Court concludes that defendant's claim does not support dismissal of the indictment at this time.

As to the first prong of the selective prosecution test, namely selectivity, defendant claims that the statistics on passport fraud prosecutions submitted to the

---

**2.** The Court notes that in *Washington,* the evidence of the federal agent's alleged intrusion on the Black Hebrew meeting was in the form of

an affidavit rather than a newspaper article. This difference, however, is not significant since it is one of form rather than substance.

court in *United States v. Washington*, "by any reasonable measure" show a *prima facie* case of selectivity. Defendant's Memorandum at p. 7. This Court cannot reach that conclusion.

The statistics facially indicate that 4.5% of passport frauds known to the government between 1976–81 resulted in arrest warrants being issued or criminal prosecutions being started. *See* Defendant's Memorandum at pp. 4–6. Additionally, they facially indicate that in 1981, the year of defendant Napper's alleged offense, only 2.8% resulted in arrests or prosecutions. *Id.* at 6. While these numbers do reflect some selectivity in prosecution, they do not assist the defendant in showing that she was selectively prosecuted from "among others similarly situated."[3] The Court agrees with the Government's statement submitted in its memorandum as part of Attachment K:

> Everyone who makes a misstatement in a passport application is not in the same category...

Prosecution may be declined for a variety of reasons including the existence of related pending drug charges against an individual, or other legitimate governmental policy reasons. Defendant Napper has not shown that others *in her position*, have not been prosecuted.

Even if this Court were to find that the defendant had successfully proven the "selectivity" prong of the D.C. Circuit standard, it would be unable to grant the motion to dismiss because the defendant has not shown that the government based its decision to prosecute her on impermissible considerations. Defendant Napper has neither claimed to be a member of the Black Hebrews nor shown why the government would believe that she is a Black Hebrew. *See United States v. Napper*, 553 F.Supp. 231, 233 (E.D.N.Y.1982).[4] In order to selectively prosecute on the basis of religion, the government must have knowledge or at least suspect that an individual belongs to a particular sect.[5]

Defendant claims that "[t]here are indications that the Israeli government sought and obtained the cooperation of the United States government in stemming Black Hebrew immigration into Israel and that the United States government, in concert with the Israeli government, is actively participating in a course of conduct designed to keep American Black Hebrews from even attempting to visit Israel." Defendant's Memorandum at p. 10. This conclusion is unsupported by the facts before this Court.

According to the Knesset Report, Israel and the United States negotiated an agreement to assist any Black Hebrew who seeks to return to the United States. *Knesset Report* at p. 60. The report also indicates that federal agents have been engaged in extensive investigations of suspected fraud, theft and embezzlement offenses allegedly committed by Black Hebrews. *Id.* at 50, 86; *accord Napper*, 553 F.Supp. at 233. These facts do not reveal the active participation of United States authorities in immigration curtailment

---

**3.** In addition, the Court notes that the statistics may not be a completely accurate accounting of the prosecutions in passport fraud cases. This inference is drawn from the testimony of Francis Headley, a paralegal specialist in the Office of Passport Services ("OPS"), recorded in the case of *United States v. Washington*. Headley testified that since the statistics included only those dispositions in which the investigative agency informed OPS of the case resolution, they were not all inclusive. Transcript of Proceedings, Vol. I, pp. 117–126. Additionally, at the direction of the trial judge, Headley re-computed the statistics for 1981 and concluded that almost 40 warrants of arrest or prosecutions were missing for 1981 alone. *Id.* at Vol. II. pp. 194–96.

**4.** Defendant points to the government's characterization of defendant Napper as a Black Hebrew during the bond hearing in the Eastern District of New York companion case *Napper*. This fact does not determine whether the government knew or had reason to know of Napper's alleged affiliation with the Black Hebrew sect at the time it decided to commence prosecution.

**5.** The Court notes that there is not space on a passport application to list one's religious beliefs or affiliations. *See* Government's Memorandum at Attachment F.

which could lead to an inference of impermissible motive for prosecution.[6]

■ Under the standard set forth in the D.C. Circuit decision in *Attorney General v. Irish People, Inc.*, if either prong of the selective prosecution test is failed, the whole defense fails. 684 F.2d 966. The Court has concluded that the defendant failed to meet either prong of the test. As such, defendant's motion to dismiss the indictment must be denied.

## III. MOTION FOR DISCOVERY

■ Defendant has asked this Court to enter an order directing the government to produce two sets of documents: (1) documents reflecting the number of detected passport violations and prosecutions involving persons known, or thought by the government to be, Black Hebrews; and (2) communications between the Israeli government and United States officials that might have resulted in intensified United States investigation or prosecution of Black Hebrews or their sympathizers. The standard for reviewing such a request is now clear and set forth in *Attorney General v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir.1982).[7] A defendant alleging the selective prosecution defense, even at the discovery stage, must offer "at least a colorable claim *both* that the prosecution was improperly motivated *and* that it was selective in the first place." *Id.* at 932. The Second Circuit has defined the term "colorable basis" to mean the existence of "some evidence tending to show the existence of the essential elements of the defense and that the documents in the

government's possession would indeed be probative of these elements. *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974).[8] Upon consideration of this standard and the evidence presented in the parties' memoranda, the Court concludes that defendant's discovery request should *not* be granted.

In *United States v. Washington*, No. 81–375, slip op. at 7 (D.D.C. February 23, 1982) and *United States v. Napper*, 553 F.Supp. 231, 234 (E.D.N.Y.1982), the respective trial judges granted limited discovery on Black Hebrew selective prosecution claims. Neither court, however, specifically addressed whether a "colorable basis" existed for the "selectivity" prong of the test. In addition, neither opinion set forth any facts which, in this Court's view, would have constituted a "colorable basis" for selectivity. As such, this Court is not persuaded by the reasoning in these opinions.[9]

■ As previously noted, the statistics submitted by defendant concerning passport fraud prosecution, did not make out a *prima facie* claim of selectivity. Additionally, the Court concludes that the statistics do not show a "colorable basis" for "selectivity". At best, they show a low and declining prosecution rate in passport fraud cases. The mere fact that only a small number of individuals have been prosecuted for passport fraud and that one or two of these individuals happened to be Black Hebrews, does not show selectivity from among others similarly situated to the defendant in this case. As reported in a recent *Washington Post* article, law en-

---

**6.** Defendant's reference to a statement by Avi Pazner, press counsel for the Israeli Embassy, reported in a column dated November 21, 1980 by William Rasberry in *The Washington Post*, is equally non-dispositive. The statement makes no reference to a joint U.S.-Israeli policy against the Black Hebrew sect.

**7.** Prior to the *Attorney General* case, it was unclear whether the showing a defendant must make to obtain discovery differs from the showing a defendant must make to establish a *prima facie* case of selective prosecution. The D.C. Circuit, in *United States v. Diggs*, specifically reserved that issue for another time. 613 F.2d

988, 1003 n. 87 (D.C.Cir.1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 838 (1980).

**8.** Not to require at least a colorable entitlement to the defense would be to encourage the assertion of the defense, no matter how spurious, as a means of burdening criminal trials with massive discovery, completely irrelevant to the defendant's case. *United States v. Murdock*, 548 F.2d 599, 600 (5th Cir.1977).

**9.** It should also be noted that the trial judge in *Washington* relied on a lower court decision eventually reversed by the Court of Appeals in *Attorney General v. Irish People, Inc.*, 684 F.2d at 966.

forcement authorities have found many Black Hebrew sect members to be involved in illegal or fraudulent activities. "Some Black Hebrews' Identities Pose Problem to Authorities", *The Washington Post*, November 14, 1983 at p. D–1. The Court cannot conclude that the defendant has come forth with enough evidence to raise an inference of selectivity in prosecution. Defendant's prosecution appears to be the result of her own illegal activities. *See* Government's Memorandum at pp. 2–7 (outlining Defendant's activities that led to the indictment in this case).[10]

Given these conclusions, the Court determines that the defendant has *not* presented a "colorable" basis for her selective prosecution claim, and thus cannot order the government to produce either the statistics on Black Hebrew prosecutions[11] or the communications between Israel and the United States[12] as requested by the defendant.

## IV. CONCLUSION

After full consideration of the parties' memoranda and the exhibits submitted for review, the Court determines that the defendant has failed to establish a *prima facie* case for selective prosecution and thus declines to dismiss the complaint.

Moreover, the Court concludes that defendant has not presented a "colorable" showing of the defense and is therefore *not* entitled to limited discovery for her claim. The Court will enter an order in accordance with the foregoing of even date herewith.

## ORDER

Upon consideration of the defendant's Motion to Dismiss, the government's opposition thereto, and the entire record herein, and for the reasons set forth in the accompanying Opinion, of even date herewith, it is by this Court this *16th* day of November, 1983,

ORDERED that defendant's Motion to Dismiss the Indictment on Selective Prosecution grounds is denied, and it is further

ORDERED that defendant's Motion for Discovery is denied and it is further

ORDERED that if statistics concerning the prosecution of Black Hebrews are found to exist in the Government's possession and those statistics are produced in the companion case to the case at bar in the Eastern District of New York, the Court will consider again whether discovery is warranted or proper under the circumstances of this case and the possible prudential considerations involving the doc-

---

**10.** Since the Court finds no "colorable basis" for the selectivity prong of the selective prosecution test set forth in the *Attorney General* decision, it is not necessary to address whether a "colorable claim" exists as to improper motivation.

**11.** The Court recognizes, however, that the statistics the defendant requests concerning the number of Black Hebrew prosecutions are probably the most probative evidence to prove selectivity, and this information, if it exists, is in the hands of the Government. In addition, the Court notes that the Government has been ordered by Judge Neaher of the Eastern District of New York to release such statistics to defense counsel, who is representing Ms. Napper both here and in New York. *See* 553 F.Supp. at 234.

In the *Washington* case, Judge Penn of this Court found after several days of testimony that "there are no records that would specifically demonstrate how many Black Hebrews have been prosecuted and what percentage of other groups have been prosecuted as compared to members of the Black Hebrew sect...." *United States v. Washington*, No. 81–375, Transcript of Proceedings at p. 650 (D.D.C. March 26, 1982).

If, however, such statistics are found to exist and are produced by the Government in the Eastern District of New York, this Court will then examine the information contained therein and consider whether discovery should be allowed.

**12.** Even if the defendant had shown a "colorable basis" for her selective prosecution claim, the Court would have deep concerns about ordering the United States government to release communications between the United States and Israeli governments. Such documents may well contain sensitive and confidential information relating to either military or diplomatic relationships. The "fundamental division of authority and power established by the Constitution precludes judges from overseeing the conduct of foreign policy or the use or disposition of military power; these matters are plainly the exclusive province of Congress and the Executive." *Ramirez de Arellano v. Weinberger*, 568 F.Supp. 1236, 1238 (D.D.C.1983), *quoting Luftig v. McNamara*, 373 F.2d 664, 665–66 (D.C.Cir.), *cert. denied*, 387 U.S. 945, 87 S.Ct. 2078, 18 L.Ed.2d 1332 (1967).

trine of separation of powers and the cases holding that courts should not allow parties to interject themselves into matters involving sensitive foreign policy deliberations and communications with other nations.