Flossie N. ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 81–145.

District of Columbia Court of Appeals.

Argued March 9, 1982.

Decided July 1, 1982.

Patricia R. Ambrose, Washington, D. C., appointed by the court, with whom David A. Kikel, Washington, D. C., was on the briefs, for appellant.

J. Alvin Stout III, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry and John R. Fisher, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

MACK, Associate Judge:

Appellant challenges her convictions of voluntary manslaughter while armed (D.C.Code 1973, §§ 22–2405, –3202) and carrying a pistol without a license (D.C.

Code 1973, § 22–3204) on numerous grounds. She claims that the motions judge erred in failing to suppress her oral and written confessions, that the trial court erroneously denied her right to be present during the impaneling of the jury, and that it incorrectly excluded; 1) testimony as to the decedent's boasts of having killed a man, 2) expert testimony regarding the ability of victims of gunshot wounds to move after being shot and, 3) evidence supporting her belief that retreat from the decedent was impossible. Lastly, she claims she was denied her Sixth Amendment right to effective assistance of counsel.[1] We find that the trial court erred in denying appellant her right to be present at voir dire and in excluding evidence as to the decedent's boasts. We conclude, on this record, that the former error requires reversal and, thus, need not consider the impact of the second.

■ Factually, it will suffice to say here that the government's evidence showed that one Benorais T. Webster was found dead in

his home, the victim of a shooting at point blank range in the back of his head. Police investigating the murder first contacted appellant's mother late on the morning of May 16, 1979, some seven days after the approximate date of death. The two women immediately appeared at the homicide office and, in the discussions that followed, appellant blurted out "I didn't want to hurt anyone. I thought he loved me, but he used me." She then said that she shot the decedent in self defense. After she was arrested and advised of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), she executed a four page statement regarding the shooting which was introduced at trial.[2]

■ Appellant testified at trial as to her relationship with the decedent, the violence he had exhibited toward her and others, her fear for her life on the night that she shot the decedent, his threatening her life that night and her inability to escape from his advances.[3] Photographs of appel-

1. We reject at the outset appellant's Sixth Amendment claim. Despite appellant's contention to the effect that trial counsel's "stewardship was not the model of trial advocacy . . . ," *Jennings v. United States*, D.C.App., 431 A.2d 552, 557 (1981), we find that the "main thrust of appellant's [self] defense [claim] was presented." *Id.* Appellant's attorney developed his theory of self-defense in his opening and closing statements and presented numerous witnesses who testified as to prior violent acts by the decedent and his reputation in the community. *Compare Oesby v. United States*, D.C.App., 398 A.2d 1, 4–6 (1979). As such, we cannot agree with appellant that she has met the " 'heavy burden of proving prejudice' in asserting a claim of ineffective assistance of counsel." *Williams v. United States*, D.C.App., 421 A.2d 19, 26 (1980) (quoting *Thornton v. United States*, D.C.App., 357 A.2d 429, 435, *cert. denied*, 429 U.S. 1024, 97 S.Ct. 644, 50 L.Ed.2d 626 (1976)).

2. The record in this case substantially supports the motions court's denial of appellant's motion to suppress her incriminatory oral and written statements. "[A] court's conclusion that [a] statement was voluntarily made will not be overturned unless it was without substantial support in the evidence." *Taylor v. United States*, D.C.App., 380 A.2d 989, 992 (1977) (citing *United States v. Lyon*, D.C.App., 348 A.2d 297, 299 (1975)); *United States v. McNeil*, 140 U.S.App.D.C. 3, 6, 433 F.2d 1109, 1112 (1969).

The motions court here found, despite the conflicting testimony of appellant and one Detective Fickling regarding the circumstances surrounding her statements, that it was undisputed that the "defendant came to the station of her own accord . . . [a]nd that what transpired thereafter was voluntary [in] nature." Since the record shows that " 'the kind of atmosphere of significant restraint that triggers *Miranda* . . . ,' " *Calaway v. United States*, D.C. App., 408 A.2d 1220, 1225 (1979), *cert. denied*, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970) (quoting *United States v. Hall*, 421 F.2d 540, 545 (2d Cir. 1969)); *see Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977), was not present here and that appellant's statements were not the result of a coercive custodial interrogation, the court acted correctly in denying the motion to suppress.

3. The trial court did not abuse its discretion in refusing to permit testimony on surrebuttal which appellant contends would have shown that she reasonably believed she had no avenue of escape from the decedent's house on the night of his death. On direct, she testified that she was frightened because the downstairs door was locked and "it's bars upstairs all around the windows. There is no way out." In rebuttal, Detective Fickling testified that there were no bars on the upstairs windows. Appellant attempted, on surrebuttal, to present

lant showing injuries allegedly inflicted on her by the decedent were introduced into evidence. Other witnesses testified as to the decedent's violent temper and his reputation as a dangerous man. The parties stipulated that the decedent had been convicted in 1970 of assaulting a police officer with a dangerous weapon. The court ordered the striking, as hearsay, of testimony by appellant that the decedent earlier had boasted to her of having murdered a man and gotten away with it.[4] The jury returned a verdict of voluntary manslaughter although appellant was charged with second-degree murder.

■ On this appeal, we need concern ourselves at length only with appellant's challenge to the trial court's refusal to permit her to be present at the bench during the bulk of the voir dire portion of her trial.[5]

In *Hopt v. Utah*, 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884), the Supreme Court stated that "[for] every purpose, therefore, involved in the requirement that the defendant shall be personally present at the trial ... the trial commences at least from the time when the work of empaneling the jury begins." *See also Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). These holdings are codified in both FED.R.CRIM.P. 43(a) and Super. Ct.Cr.R. 43(a) which require the presence of a defendant "at every stage of the trial including the impaneling of the jury. . . ." *See* Committee Note to FED.R.CRIM.P. 43(a) (1946). In addition, this court has stated that "[c]ertainly an accused has the right to be present and to consult with counsel during the jury selection process." *Tatum v. United States*, D.C.App., 330 A.2d 522, 524 (1974) (citations omitted); *see generally* Annot., 26 A.L.R.2d 762 (1952).

Appellant contends that reversal is mandated because the trial court violated the letter and spirit of Rule 43(a) and the aforementioned authorities by, contrary to a re-

---

testimony to the effect that "someone looking out the window ... could have assumed or thought there might have been bars on the window." The court refused to admit the testimony stating that "[t]he issue is whether or not there are bars on the second floor window." Since "[t]he decision to allow rebuttal evidence is committed to the discretion of the trial judge; we will reverse her decision only for an abuse of discretion." *Fitzhugh v. United States*, D.C. App., 415 A.2d 548, 551 (1980) (citing *Gregory v. United States*, D.C.App., 393 A.2d 132, 137 (1978)). We cannot say that the trial court abused its discretion here by refusing to permit testimony which did not "meet and reply to evidence presented ... in rebuttal." *United States v. Greene*, 497 F.2d 1068, 1083 (7th Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975) (citing McCORMICK, EVIDENCE § 4 (2d ed. E. Cleary 1972)).

4. The trial court clearly erred in striking as hearsay, testimony as to the decedent's boast to appellant of having earlier murdered a man. "[A]ccounts of violence told to the [defendant] and repeated by [her] on the stand serve to establish the reasonableness of [her] mental judgments and physical responses at the time of the encounter" and are admissible hearsay (or nonhearsay). *King v. United States*, D.C. Mun.App., 177 A.2d 912, 913 (1962). *See generally McBride v. United States*, D.C.App., 441 A.2d 644 (1982).

In view of our disposition of this case we do not reach the question of whether in the circumstances of this case the error was harm-less. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Holloway v. State*, 38 Ala.App. 434, 89 So.2d 313, *cert. denied*, 89 So.2d 317 (1956).

5. We find no merit to appellant's final contention that the trial court abused its discretion in not admitting the expert testimony of two World War II veterans proffered by appellant to recite their experiences in "seeing men die, in the process of dying." *See Dyas v. United States*, D.C.App., 376 A.2d 827, 831, *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977) (citing *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962)). *Accord, District of Columbia v. White*, D.C.App., 442 A.2d 159 (1982). In its case-in-chief, the government called a deputy medical examiner for the District of Columbia who testified that the bullet wound to the back of the decedent's head would have caused him to lose muscle control and to collapse where he was shot and that the position of his body was consistent with the government's contention that he was shot while sitting on his bed and thereafter pitched forward and fell onto the floor. In rebuttal, the defense sought to call the two witnesses who had never before been qualified as forensic pathologists and had not reviewed any of the evidence in the case. We cannot say that, on this record, the trial court's refusal to admit the proffered testimony was "manifestly erroneous." *Dyas v. United States, supra* at 831.

quest by her counsel, conducting portions of voir dire at the bench while she remained at counsel table. While we agree with appellant that Rule 43(a) was violated here, we question whether we are in a position to adopt the proffered *per se* rule, *see Bunch v. State*, 281 Md. 680, 381 A.2d 1142 (1978), for we are not writing on a clean slate. In a recent case in which a trial court committed error in communicating with the jury outside the presence of the defendant, we held that the question was whether the government had shown the trial court's error to have been "harmless beyond a reasonable doubt." *Winestock v. United States*, D.C.App., 429 A.2d 519, 529 (1981). *See also United States v. Alessandrello*, 637 F.2d 131 (3d Cir. 1980), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981). Having adopted the "constitutional harmless error" analysis in this analogous situation, we are wedded to examining the cases on an ad hoc basis.

■ On this record we cannot find that the trial court's error was harmless beyond a reasonable doubt. *See United States v. Crutcher*, 405 F.2d 239, 244 (2d Cir. 1968), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). *Cf. Henderson v. United States*, 419 F.2d 1277 (5th Cir. 1970) (harmless error where challenge for cause portion of voir dire was conducted in chambers and defendant's attorney stated there was no necessity to repeat the procedure for the benefit of defendant). The bulk of voir dire (*i.e.*, that part consisting of conferences with individual prospective jurors regarding their ability to render a fair and impartial verdict) was conducted at the bench while appellant, over protest, remained at counsel table. *Contra United States v. Dioguardi*, 428 F.2d 1033, 1039 (2d Cir.), *cert. denied*, 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970). Those conferences—colloquies between the court and some 26 prospective jurors—are recorded in some 40 pages of the transcript—and indeed the colloquies represent the only time the majority of these individuals spoke. Thus, the situation is unlike that in *United States v. Alessandrello, supra*, where the Third Circuit concluded that the violation of Rule 43 consti-

tuted harmless error. In *Alessandrello*, the trial judge interviewed prospective jurors in a small anteroom outside the presence of the defendants with regard to pretrial publicity only after the defendants had heard and observed each of the jurors in the open courtroom give complete details of their personal lives and answer some ten general and follow-up questions. *See United States v. Chrisco*, 493 F.2d 232 (8th Cir.), *cert. denied*, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). In the instant case, only some ten jurors spoke in open court to answer two questions about their exposure to law or family relationships to law enforcement officers. The remainder of the voir dire was conducted at the bench which the appellant was permitted to approach only after the conclusion of voir dire and for the purpose of exercising peremptory challenges. *Cf. Tatum v. United States, supra* (voir dire was conducted in open court). As such she has not had "an opportunity beyond the minimum requirements of fair selection to express an arbitrary preference . . ." which the peremptory challenge is designed to ensure, *Frazier v. United States*, 335 U.S. 497, 506, 69 S.Ct. 201, 206, 93 L.Ed. 187 (1948), and was "[un]able to assist [her] counsel in the selection of the jurors." *Arnold v. United States*, D.C.App., 443 A.2d 1318, 1327 (1982).

*Reversed.*