Thomas YOUNG, Appellant,

v.

**UNITED STATES, Appellee.**

No. 82–1373.

District of Columbia Court of Appeals.

Argued March 7, 1984.

Decided June 22, 1984.

---

Ted Kavrukov, Washington, D.C., appointed by this court, for appellant.

Thomas E. Zeno, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty. and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before NEBEKER and PRYOR, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

Seeking reversal of his conviction for unlawful entry in violation of D.C. Code § 22–3102 (1981), appellant contends that the trial court committed error in excluding him from participating in the *voir dire* of several prospective jurors conducted at the bench. He also cites as error the trial court's failure to compel the government to disclose *Lewis* material upon request.[1] We affirm.

The events leading to appellant's conviction may be summarized as follows. In the early morning hours of December 29, 1981, complainant Karen Palmer observed from the window of her home two men walking down the street. She watched the men as they crossed the street and climbed over a neighbor's fence. When the men entered complainant's backyard, she immediately called the police. Complainant continued to watch as the two men climbed onto the back porch of her house and began to tamper with the locks on the back door.

Officer Elkins, the first officer to respond to complainant's call, pursued two men he saw climbing over a fence in back of Palmer's house. Appellant was apprehended a few blocks away and was taken back to complainant's home. Palmer positively identified appellant as the person she had seen earlier on the back porch of her house. By an information filed December 29, 1981, appellant was charged with unlawful entry, D.C. Code § 22–3102 (1981), and attempted second-degree burglary, *id.* §§ 22–103, –1801.[2]

---

1. *Lewis* material is the record of a witness' impeachable convictions which the government is required to produce upon request of defense counsel. *Lewis v. United States,* 408 A.2d 303 (D.C.1979).

2. Appellant was convicted of the first offense only. The jury returned a verdict of not guilty on the charge of attempted second-degree burglary.

Before the formal jury selection process began, defense counsel requested the trial court to allow appellant to be present during any portion of the *voir dire* conducted at the bench. In support of his request, counsel cited this court's decision in *Robinson v. United States*, 448 A.2d 853 (D.C. 1982), as authority. The trial judge remarked that he was not familiar with the decision and denied defense counsel's request. Selection of the jury continued and the court addressed the following three-part question to the pool of prospective jurors:

> Has any member of the jury panel or a close relative of yours ever been [1] charged with, [2] the victim of or [3] a witness to a crime or crimes similar to ... unlawful entry and attempted burglary in the second degree?

Eleven prospective jurors responded affirmatively to the question and reported to the bench. After posing some questions to the prospective jurors regarding their ability to render a fair and impartial verdict, the court *sua sponte* excused eight of the eleven *veniremen*.

The balance of the *voire dire* was conducted in open court. The remaining panel members were quizzed on their involvement in the field of law enforcement and the criminal justice system and their perceptions of the credibility of police officers. The court concluded the *voir dire* by asking the entire panel whether they were capable of rendering a fair and impartial verdict in the instant case.

At this time, defense counsel informed the court that Juror No. 333 had not revealed that he was employed by the Metropolitan Police Department as a computer specialist. The prospective juror was questioned at the bench by the court, the prosecutor and defense counsel. The juror was retained after all counsel were satisfied

that his contact with individual police cases was minimal.

Counsel then approached the bench and began to exercise their peremptory challenges. The government exercised all three of its strikes. Defense counsel, however, only used two of his three allotted challenges.[3] During the first round, each side struck a prospective juror. Defense counsel passed on the second round of challenges. On the third and final round, defense counsel struck Juror No. 59, who had been questioned at the bench during the *voir dire.*

At the conclusion of the jury selection process, only three of the total twelve prospective jurors who had been questioned at the bench during *voir dire* were impaneled and sworn as jurors. They included Jurors No. 266, 455 and 333. Defense counsel reiterated his objection to appellant's absence during the *voir dire* bench conferences. The trial court conceded error and, in an effort to cure the error, on three separate occasions informed defense counsel that Juror No. 455 could be stricken and replaced with an alternate. The trial court initially stated:

> ... almost everyone who came to the bench, we excused them. There is only one who came to the bench to answer that [three part] question who is sitting now on the jury. That's juror number 11 [455]. Now, if you want, I will remove her and put an alternate in.

Later, the offer to strike was again extended, "I will give you the opportunity if you want to remove her." Finally, it was reiterated a third time, "If you want [her] stricken, we will strike her." In response, trial counsel, now counsel on appeal, stated, "I have no objection to number 11 [455] remaining." Eventually the government struck Juror No. 455 with the consent of defense counsel.[4]

---

3. Pursuant to Super.Ct.Crim.R. 24(b), each side was entitled to three peremptory challenges. Rule 24(b) provides in pertinent part:
   If the offense charged is punishable by imprisonment for not more than one year or by fine

or both, each side is entitled to three peremptory challenges.

4. The trial court's offer to strike the tainted juror only extended to No. 455. The court ruled that *Robinson* did not apply to No. 333 because

Appellant claims that his right to be present during all stages of his trial,[5] *Hopt v. Utah*, 110 U.S. 574, 578, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884), was impermissibly restricted because he was not present during those portions of the *voir dire* conducted at the bench. Appellant, relying upon *Robinson, supra,* 448 A.2d at 853, argues that denial of this right mandates reversal. We disagree.

■ In *Robinson,* this court declared that under Super.Ct.Crim.R. 43(a), an accused, upon request, should be allowed to participate in *voir dire* conducted at the bench. *See also Brodis v. United States,* 468 A.2d 1335 (D.C.1983); *Welch v. United States,* 466 A.2d 829 (D.C.1983). However, this right is not of such magnitude that an accused's absence from the bench will, in all cases, necessitate reversal. In fact, the *Robinson* court specifically declined to adopt the rule of reversal *per se* advanced by appellant, choosing instead to examine the cases on an *ad hoc* basis. *Robinson v. United States, supra,* 448 A.2d at 856.

■ Since there is no dispute that the trial court's ruling in the instant case was in direct contravention of *Robinson,* the remaining issue before this court is whether "the government has shown the trial court's error to be 'harmless beyond a reasonable doubt.'" *Id.* at 856 (quoting *Winestock v. United States,* 429 A.2d 519, 529 (D.C.1981)). We hold that the government has sustained its burden.

Our examination of the record indicates that appellant had an opportunity to hear

and observe the *voir dire* of a majority of the jurors. Only a very limited portion of the entire *voir dire* was conducted at the bench. Out of the twelve prospective jurors questioned at the bench outside of the presence of appellant, only two of the jurors so questioned, Nos. 333 and 266, actually became sworn members of the panel.

The bench *voir dire* of Juror No. 266 was conducted after she responded affirmatively to the trial court's open court inquiry regarding the jurors' prior involvement with the criminal justice system. At the bench, Juror No. 266 revealed that her brother was currently serving a prison term for a 1976 bank robbery conviction. She was retained after assuring the court that this experience would not interfere with her ability to arrive at a fair verdict. Neither defense counsel nor the prosecutor questioned the juror at the bench.

Juror No. 333 was questioned at the bench after defense counsel mentioned to the court that the juror had not revealed his employment as a computer specialist with the Metropolitan Police Department. At the bench, Juror No. 333 stated that his job only involved providing statistical information to the police and that he had no direct contact with individual cases. He was retained after questioning by the court and defense counsel, who voiced no objection. The prosecutor made no inquiry of Juror No. 333.

Appellant makes no showing of prejudice stemming from the presence of the above two jurors on the panel and, indeed, makes no claim of prejudice whatsoever.[6] We fur-

---

his bench conference did not concern a reply to the court's three-part question. Furthermore, the record indicates that both counsel agreed to No. 333 being retained. While defense counsel stated that he had no problems with Juror No. 333 remaining on the panel, appellant was never given an opportunity to voice his opinion regarding No. 333.

No reason appears as to why the court did not suggest that it would strike Juror No. 266 as well. It may be that the trial court had overlooked the fact that No. 266 had been questioned at the bench on her response to the three-part question. However, in the absence of

any claim or showing of prejudice, we find no reversible error.

5. This common law right is embodied in Super. Ct.Crim.R. 43(a). It provides in part:
    (a) PRESENCE REQUIRED. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this Rule.

6. We must assume that the appellant realized he had one unused peremptory challenge remain-

ther note that the bench *voir dire* consisted of only twelve pages of transcript. Thus, unlike our recent case of *Robinson,* the bulk of the *voir dire* was not conducted at the bench. *See also United States v. Washington,* 227 U.S.App.D.C. 184, 193, 705 F.2d 489, 498 (1983). In *Robinson,* this court held that the bench *voir dire* of twenty-six jurors covering forty pages of transcript warranted reversal. The number of jurors involved and the length of the bench conferences distinguish that case from the facts on this appeal.

While we do not intend our decision to trivialize in any manner the rights protected in *Robinson,* the facts before us do not indicate that appellant's immediate presence at the bench during the brief examination of the remaining two jurors would have changed the outcome of the trial. *See United States v. Alessandrello,* 637 F.2d 131 (3d Cir.1980), *cert. denied,* 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981); *Henderson v. United States,* 419 F.2d 1277 (5th Cir.1970). Under these circumstances, we must conclude that there is no reasonable possibility that the error contributed in any way to appellant's conviction. *See Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Accordingly, we hold that the error was harmless beyond a reasonable doubt.[7]

Appellant's second claim of error concerns the failure of the prosecutor to promptly disclose the impeachable convictions of a government witness upon request. Relying on this court's opinion in *Lewis v. United States, supra,* 408 A.2d at 303, appellant argues that the government's obligation to produce this material at trial is mandatory and that failure to do so requires reversal. We disagree.

▪ In *Lewis,* we declared that the government has an obligation to produce impeachable convictions of government witnesses upon defense request at trial. Due

process requires the at-trial production of this information, but only to the extent of the government's knowledge of them. *Id.* at 310–11. The duty to reveal impeachable convictions is not, however, limited to the personal knowledge of the particular prosecuting attorney. The prosecution is deemed to "know" about all prior convictions of its witnesses which are listed in government records accessible to the prosecutor. Therefore, in order to determine whether the prosecutor in the instant case fulfilled his duty of disclosure under *Lewis,* we must determine whether the government actually "possessed" the requested information concerning the impeachable conviction of a government witness.

▪ After both sides made opening statements to the jury, defense counsel requested production of the record of the impeachable convictions of the complaining witness, Karen Palmer. The prosecutor remarked that this was the first time appellant had requested such information. Defense counsel denied this, arguing that he always makes *Lewis* requests and always follows up the request with a letter. Neither defense counsel nor the Assistant United States Attorney, however, could locate a copy of the confirmation letter. Following a luncheon recess, the prosecutor informed the trial court that a search revealed that there was indeed an FBI record on Palmer, but that a printed report was unavailable because of a malfunction in the FBI computer. The prosecutor delayed calling Palmer as a witness in the hope that the malfunction could be corrected and a printout obtained at a later date. When Palmer, the last government witness to testify was called, the FBI record was still unavailable. On direct examination, Palmer admitted that she had been arrested once, but stated that the charges were later dropped. Once again defense counsel requested the witness' record and the court granted another recess. A search of Palmer's local records in the courthouse file

---

ing which could have been used to strike either of the two jurors in question had he been disturbed by their presence on the panel.

**7.** *Cf. Welch v. United States, supra,* 466 A.2d at 839 n. 6.

verified Palmer's testimony of a single un-prosecuted arrest. Defense counsel was still not satisfied, however, and insisted upon obtaining a copy of the complaining witness' record. In response to this final request, the court declared: "I think that the government has made every sincere effort to comply. I will rule that they have complied."

Appellant claims that he made his *Lewis* request pretrial, yet he never demonstrated to the trial court or to this court that he did indeed make the request before trial. Under such circumstances, the government was only required to supply the information available to it at the time the request was made. On the day of trial when the initial *Lewis* request was made, a printed record of the witness' impeachable convictions was unavailable because the FBI computer was inoperative. During the two courtroom recesses, government efforts uncovered the witness' single unprosecuted arrest. The same information was elicited from the witness herself during the prosecution's direct examination. We believe that the prosecutor, not having any advance notice, revealed all of the practically available information to the defense promptly. Thus, we conclude that the government's obligation under *Lewis* was satisfied.

*Affirmed.*