Michael N. **KLEINBART**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 11932.

District of Columbia Court of Appeals.

Argued Nov. 13, 1987.
Decided Feb. 15, 1989.

R. Kenneth Mundy, Washington, D.C., for appellant.

Mary Ellen Abrecht, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty, Washington, D.C., were on the brief, for appellee.

Before MACK and NEWMAN, Associate Judges, and GALLAGHER, Senior Judge.

MACK, Associate Judge:

On appellant's motion, and with the government's agreement that it would be appropriate, a division of this court has recalled its prior mandate remanding the case to the trial court for a new trial on appellant's insanity defense, and a hearing on claims that the government withheld *Brady*[1] materials[2] from him. *See Kleinbart v. United States (Kleinbart II)*, 426 A.2d 343 (1981). This division, while concerned with the nonfinality of a cause of action which has moved back and forth

---

1. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

2. At oral argument, appellant's counsel apprised the court that a trial was still pending on the insanity defense. The *Brady* issue has been resolved by the trial court. The trial court found that the government violated appellant's *Brady* rights by not delivering materials to him, but this violation was not of such magnitude as to undermine the verdict or justify reversal.

between the trial and appellate courts, nevertheless concludes that the mandate of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), requiring the retroactive application of new rules to nonfinal cases, dictates that appellant's conviction be reversed, and a new trial ordered, because of the trial court's refusal to permit appellant to be present at voir dire pursuant to Super.Ct.Crim.R. 43(a) (1981).[3] *See Robinson v. United States*, 448 A.2d 853 (D.C.1982), *reh'g en banc denied*, 456 A.2d 848 (D.C.1983).

I

Appellant was indicted on July 1, 1975, for first-degree murder while armed, first-degree murder, and carrying a pistol without a license. Appellant's first trial ended in a mistrial on the murder charges, and his conviction of the weapons charge was reversed because his constitutional right to a public trial had been abridged. *Kleinbart v. United States (Kleinbart I)*, 388 A.2d 878, 879 (D.C.1978). In a second trial, appellant appeared *pro se*, assisted by court-appointed stand-by counsel, and upon being found guilty of first-degree murder while armed, was sentenced to a prison term of twenty years to life. On a second appeal, in *Kleinbart II, supra*, appellant argued, among other things, that he had been denied the right to conduct his own defense *pro se*, in part because the trial court refused to allow him to participate in voir dire conferences conducted at the bench, preferring stand-by counsel to be present in his stead. We answered the narrow argument by noting that the trial judge conducted the entire voir dire and gave stand-by counsel time to relate the prospective jurors' answers to appellant. We expressly rejected most of the other issues on appeal, but remanded for a hearing on

whether there had been government suppression of *Brady* materials, and, in view of the trial court's denial of bifurcation, for a new trial on the insanity defense. However, while those proceedings were still pending, we decided in *Robinson v. United States, supra*, 448 A.2d at 856, that it was error to exclude a criminal defendant from bench voir dire. Accordingly, appellant petitioned this court to recall its mandate in *Kleinbart II*, and now seeks reversal and a new trial by reason of the trial court's violation of the principles later announced in *Robinson*.

II

◼ In *Griffith v. Kentucky, supra*, a case involving the retroactive application of the *Batson*[4] decision to a state conviction pending on direct review, the Supreme Court held in sweeping and all-inclusive language that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky, supra*, 107 S.Ct. at 716; *see also United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). The government has argued in the instant case that *Griffith*, addressing the retroactivity of constitutional rules, is inapplicable to the rule announced in our *Robinson* case. *Robinson*, says the government, concerned itself only with a procedural rule violation, and moreover, "appellant's ability to conduct his defense during jury selection was not impaired by his brief exclusion." We reject this contention. We conclude that the violation of Rule 43(a) in this case is of constitutional magnitude, *see Boone v. United*

---

**3.** Superior Court Criminal Rule 43(a) provides in relevant part: *"PRESENCE REQUIRED.* The defendant shall be present at the arraignment, *at the time of the plea,* at every stage of the trial including the impaneling of the jury ..." (emphasis in original).

**4.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The *Batson* Court held that a state criminal defendant could establish a prima facie case of racial discrimination

violative of the Fourteenth Amendment Equal Protection Clause based on the government's use of peremptory challenges to strike members of the defendant's race from the jury venire, and that when a defendant had made this showing, the burden shifted to the prosecution to supply a neutral explanation for the peremptory challenges. *Id.* 476 U.S. at 96–98, 106 S.Ct. at 1722–1723.

*States*, 483 A.2d 1135, 1143 (D.C.1984) (en banc) (Belson, J., concurring), and that, under the instant circumstances, the error could not be harmless beyond a reasonable doubt. *See Beard v. United States*, 535 A.2d 1373, 1376 (D.C.1988). This is so notwithstanding dissenting Judge Gallagher's concerns about time.[5]

Appellant's request pursuant to Super.Ct.Crim.R. 43(a) to be present at bench conferences during voir dire implicated rights guaranteed under the Fifth and Sixth Amendments. *See Beard, supra*, 535 A.2d at 1373; *Boone v. United States, supra*, 483 A.2d at 1139; *Robinson v. United States, supra*, 448 A.2d at 856. We have long held that "[t]here is scarcely any right more fundamental to a criminal defendant than to be present in court while his trial is in progress." *Miller v. United States*, 250 A.2d 573, 574 (D.C.1969). Further, the constitutional status of the right to be present at one's own trial is of antique vintage. *Id.* at 574–75; *Hopt v. Utah*, 110 U.S. 574, 579, 4 S.Ct. 202, 204, 28 L.Ed. 262 (1884) (abridgement of statutory right to be present at all stages of trial violates due process). As the Supreme Court held in *Lewis v. United States*, 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892), "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing

shall be done in the absence of the prisoner." This principle embraces the right to be present at the selection of jurors, since the prisoner's "life or liberty may depend upon the aid which, by his personal presence, he may give to counsel and to the court and triers, in the selection of jurors. The necessities of the defense may not be met by the presence of his counsel only." *Id.* at 373, 13 S.Ct. at 137. *See also Boone, supra*, 483 A.2d at 1137 ("The importance of [appellant's] presence at voir dire cannot be overemphasized."). Indeed, "[b]ecause there is only one voir dire process for eliciting peremptory challenges and challenges for cause, a defendant's right to be present at voir dire for either purpose necessarily embraces the right to be present for the other." *Id.* at 1142 (Ferren, J., concurring). By excluding appellant from all bench conferences, and in particular voir dire, the court did not afford appellant " 'an opportunity beyond the minimum requirements of fair selection to express an arbitrary preference ...' which the peremptory challenge is designed to ensure, ... and [appellant] was '[un]able to assist [his] counsel in the selection of jurors.' " *Robinson, supra*, 448 A.2d at 856 (citations omitted). We conclude, as we did in *Boone*, that "[e]xcluding the [appellant] from voir dire questioning at the bench may have impaired his ability to exercise his strikes for

---

5. In his dissent, Judge Gallagher states:

Even if this case involves a "constitutional rule" in constitutional adjudication, it is quite a different thing to say that the Supreme Court decision in *Griffith*, requiring retroactive application of new constitutional rules to nonfinal cases, should be applied to this case ... where his conviction occurred some thirteen years ago, long before our first announcement of the rule requirement relating to jury selection took place in *Robinson v. United States*, [*supra*].

*Infra* at 1241–1242. Judge Gallagher fails to recognize that this is a nonfinal case (*i.e.*, a separate trial on appellant's insanity defense is still pending). It is the finality of the decision which dictates the bounds of retroactive application of constitutional rules, not the accrued time since conviction. Indeed, the very controversy which the Court in *Griffith* was resolving involved the status of prisoners convicted before its holding. That is why the Court carefully delineated the classes of cases which were to receive the benefit of retroactive application

(*i.e.*, cases pending on direct review or nonfinal cases) and specifically provided that no exceptions were to be made because the new rule constituted a clear break with the past. The Court noted that "[t]he fact that the new rule may constitute a clear break with the past has no bearing on the 'actual inequity that results' when only one of many similarly situated defendants receives the benefit of the new rule." *Id.* 107 S.Ct. at 716 (citation omitted). Focusing on the time of conviction, therefore, would erode not only the principle requiring retroactive application but the rationale underlying that principle. Thus, the Supreme Court specifically noted "the problem with not applying new rules to cases pending on direct review [or nonfinal cases] is 'the *actual inequity* that results when the Court chooses which of many similarly situated defendants should be the chance beneficiary' of a new rule." *Id.* at .714 (quoting *United States v. Johnson, supra*, 457 U.S. at 555 n. 16, 102 S.Ct. at 2590 n. 16 (emphasis in original)).

cause and may therefore have deprived him of his fundamental constitutional rights." *Id.* at 1144 (Belson, J., concurring, with whom Newman, then Chief Judge, Mack, Ferren, Pryor and Rogers, Associate Judges, joined). Here, appellant's "inability to participate implicates due process rights and deprives the proceeding of fundamental fairness." *Id.* at 1143.

■ Further, where a constitutional deprivation is involved, the government has the burden of proving the harmlessness of the error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Miller v. United States, supra,* 250 A.2d at 575. In determining whether the error was harmless, the question "is not whether the accused was actually prejudiced, but whether there is any reasonable possibility of prejudice." *Wade v. United States,* 142 U.S. App.D.C. 356, 360, 441 F.2d 1046, 1050 (1971). While we recognize that the reasonable doubt test does not require conclusive or absolute proof or harmlessness, *see Winestock v. United States,* 429 A.2d 519, 529 (D.C.1981), it requires more than a showing that the alleged prejudice may not have occurred. The government must show convincingly that the alleged prejudice was highly unlikely, and that reversal on the grounds of such prejudice would be unreasonable.

■ We conclude that the constitutional error alleged here was not harmless beyond a reasonable doubt. Appellant, who exercised his Sixth Amendment right to conduct his own defense at trial, *see Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), contends that

he was prejudiced "because not having attended the portion of the voir dire that took place at the bench ... he was without necessary information about the jurors, which would have permitted him to make an informed and intelligent use of his peremptory challenges." [6] We agree. Here three jurors [7] questioned at the bench became sitting jurors. Each of the three jurors either had a family member who had been victimized by violent crime, or was a victim himself. In representing himself, appellant was deprived of this information (*i.e.,* whether or not these jurors were impartial given their experiences with violent crime), which the court had elicited at voir dire. Indeed, the government concedes in its brief that "appellant did not hear each oral response."

■ It is not enough that appellant's stand-by counsel could convey the information from the bench voir dire to him. This court, sitting en banc, has concluded that "[n]o matter how extensive or involved were prior discussions with his lawyer, what may be irrelevant when heard or seen by his lawyer may tap a memory or association of the defendant's which in turn may be of use to his defense." *Boone v. United States, supra,* 483 A.2d at 1137. We need not decide whether the refusal of the trial court to permit appellant to be present at voir dire constituted in part a denial of his right of self-representation under *Faretta, supra.* It is sufficient to note that appellant has been denied the protection of a rule which " 'incorporates the protections afforded by the Sixth Amendment Confrontation Clause, the Fifth Amendment Due Process Clause, and the common law right

---

6. Moreover, the entire voir dire was conducted at the bench, outside appellant's presence. The case is thus distinguished from those cited in the dissent, in each of which only a portion of voir dire was conducted at the bench, and only two jurors so questioned were impaneled. *See Gary v. United States,* 499 A.2d 815, 835 (D.C. 1985) (en banc), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 (1986); *Young v. United States,* 478 A.2d 287, 290–91 (D.C.1984); *see also United States v. Washington,* 227 U.S. App.D.C. 184, 193, 705 F.2d 489, 498 (1983). By contrast, this case presents a more egregious violation than that in *Robinson, supra,* 448 A.2d at 856, where only "the bulk of voir dire" was

conducted at the bench. Further, while appellant in the instant case retained one peremptory challenge, this is but one of the factors we may consider, and hardly dispositive in consideration of the other circumstances of the voir dire, particularly since appellant was deprived of the very information that might have led him to use it.

7. While appellant lists four sitting jurors, the record indicates that one of these jurors was excused. It is interesting to note that this juror's wife was a victim of a robbery.

of presence....'" *Beard v. United States, supra,* 535 A.2d at 1375 (quoting *Welsh v. United States,* 466 A.2d 829, 838 (D.C.1983)).

 Finally, although on occasion it has been argued, as the dissent argues here, that the presence of an accused at bench voir dire would cause some discomfort to prospective jurors, and might actually work to the disadvantage of the accused, this concern is not controlling. The constitutional right of an accused to be present at trial is so precious a national heritage that it can only be waived or outweighed by misconduct so grave on the part of the accused that it threatens the endurance of the heritage itself. *Illinois v. Allen,* 397 U.S. 337, 348–50, 90 S.Ct. 1057, 1063–64, 25 L.Ed.2d 353 (Brennan, J., concurring) (1970).[8] Here appellant, complying with the rules of the court, asked to be present at voir dire; the denial of this request constituted reversible error.

REVERSED AND REMANDED.

GALLAGHER, Senior Judge, dissenting:

I do not agree that we are required to grant appellant a new trial in this case, based on this record.

On July 1, 1975, appellant was indicted for first-degree murder while armed, first-degree murder, and carrying a pistol without a license. At his first trial, a jury was unable to reach a verdict on the two murder charges and a mistrial was declared. The jury found him guilty of carrying a pistol without a license, but this conviction was reversed on appeal because his constitutional right to a public trial was violated. *Kleinbart v. United States (Kleinbart I),* 388 A.2d 878, 879 (D.C.1978). At a retrial, in which appellant represented himself (*pro se*), assisted by court-appointed standby counsel, a jury found him guilty of first-degree murder while armed. After receiving a sentence of twenty years to life, he appealed. After this court remanded the case to the trial court for further proceedings, *see infra,* appellant filed a motion for re-

hearing or rehearing en banc, which this court summarily denied. Subsequently, while the proceedings below were pending, this court issued its decision in *Robinson v. United States,* 448 A.2d 853 (D.C.1982), *reh'g en banc denied,* 456 A.2d 848 (D.C. 1983), which prompted him to file a motion to recall the mandate in *Kleinbart v. United States (Kleinbart II),* 426 A.2d 343 (D.C. 1981). This motion also was denied by order of .this court. Now, on his *third* post-appeal motion, he requests this court to recall our mandate in *Kleinbart II, supra.*

Appellant raised twelve issues on his second *direct* appeal, *Kleinbart II, supra,* 426 A.2d at 346–60, including a claim that he was denied his constitutional right to present his own defense *pro se.* One facet of this latter claim was the trial court's refusal to allow him to participate in bench conferences during voir dire questioning of the veniremen, a role the trial judge relegated to standby counsel. This court decided that appellant was not unduly restricted in conducting voir dire with the assistance of standby counsel (which assistance appellant solicited throughout trial). The court "conclude[d] that he was not deprived of his [constitutional] right to act pro se." *Kleinbart II, supra,* 426 A.2d at 349. Thus, appellant's claim of error regarding his participation in the voir dire inquiry of prospective jurors was decided by this court on the second direct review. However, on that same date (January 30, 1981), the court remanded the case to the trial court to consider three other issues: (1) whether the government suppressed exculpatory material in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); (2) whether the government withheld information of any impeachable convictions of its witnesses that was not otherwise available to the defense; and (3) if neither hearing developed information which would compel setting aside the verdict of guilty and conducting a new trial on the merits, then the trial court should conduct the second half of a bifurcated trial to

**8.** Notably, in *Allen,* the Supreme Court entertained the challenge to the constitutional right

to be present at trial some thirteen years after the trial began.

consider appellant's insanity defense. *Kleinbart II, supra,* 426 A.2d at 361.

On remand, the trial court found that the government violated appellant's rights under *Brady* by withholding information and materials from him, but that this violation was not so prejudicial to him as to require a new trial. However, there are still proceedings pending in the trial court on appellant's insanity defense. See *ante,* note 2.

At this late date, seven years after remand, this court now returns this case to the trial court for "a new trial," some twelve years after appellant's first trial and some thirteen years after the charged offenses occurred, and after all these various prior appeals and procedural motions have been decided. The majority says this is required under *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). I do not think so.

*Griffith* involved a case *on direct review* of a conviction where the issue was whether the court should apply retroactively a recently declared constitutional rule on the matter of jury selection, *viz., Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[1] The Supreme Court decided that the "failure to apply a newly declared constitutional rule to criminal cases *pending on direct review* violates basic norms of *constitutional adjudication." Griffith, supra,* 107 S.Ct. at 713 (emphasis added). The Court went on to point out that, "[a]s a practical matter, of course, we cannot hear each case pending on direct review and apply the new rule. But we fulfill our judicial responsibility by instructing the lower courts to apply the new rule retroactively to cases not yet final." *Id.*

Even if this case involves a "constitutional rule" in constitutional adjudication, it is quite a different thing to say that the Supreme Court decision in *Griffith,* requiring retroactive application of new constitutional rules to nonfinal cases, should be applied to this case—which is now before us for the fifth time, where all remand issues except the insanity question have been resolved against him, so that there would be no new trial on the merits unless so ordered here, and where his conviction occurred some thirteen years ago, long before our first announcement of the rule requirement relating to jury selection took place in *Robinson v. United States, supra.*

The right involved here (to be present at the bench during voir dire of prospective jurors) is a right we are told, and we know as a matter of common knowledge in the courthouse, that is rarely invoked because the defendant's presence at the bench inhibits eliciting candid answers from the prospective jurors.[2] Consequently, exercising this "constitutional" right (a) may be prejudicial to the defendant's personal interest and (b) may be harmful to the public interest since the defendant's presence is thought to impair selection of an impartial jury. The Supreme Court has explained that "[t]he process of juror selection is itself a matter of importance, *not simply to the adversaries but to the criminal justice system." Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 505, 104 S.Ct. 819, 821, 78 L.Ed.2d 629 (1984) (emphasis added). Thus, this right involves a mixture of the personal interest

---

1. *Batson v. Kentucky, supra,* is a case where the prosecutor used peremptory challenges for the purpose of preventing black citizens from sitting on a jury, in violation of the Fourteenth Amendment.

2. In this case, experienced counsel for appellant told the court in oral argument his perceptions about the right of the defendant to be present at the bench during voir dire of prospective jurors:

It's my policy, and my personal practice ... and I've tried over 300 cases in this jurisdiction ... I do not like the defendant to accompany me to voir dire with the jurors because *when the defendant is present [at the bench]*

*you get less than candid answers from jurors, because this is the man they have to try and sit in judgment on.* And I do not like the defendant to accompany me on bench conferences throughout the course of the trial, and the reason for that is purely one of personal preference, personal selection.

(Emphasis added.) *See also United States v. Washington,* 227 U.S.App.D.C. 184, 192, 705 F.2d 489, 497 (1983) (where the court observed that the right is "infrequently exercised").

As Justice Holmes observed long ago, the life of the law is experience. We have here the experience on this issue.

of a defendant and the public interest. This may be one reason why Rule 43(a) is viewed as "broader" (extends further) than the constitutional right to be present. *See, e.g., Welch v. United States,* 466 A.2d 829, 839 n. 7 (D.C.1983) (protective scope of Rule 43(a) is "more far-reaching than the rights of presence protected by the Constitution"); *Washington, supra,* 227 U.S.App. D.C. at 192–93 n. 5, 705 F.2d at 497–98 n. 5 ("protective scope of rule 43(a) is broader than the constitutional rights embodied in the rule").

In sending this case back for a new trial after all these many years, it stands to reason that, in all probability, it may not be susceptible of proof as a matter of reality (missing witnesses, memory problems, etc.) and the prosecution may have to be dismissed. Even if these problems do not eventuate, counsel for appellant, ironically enough, has in effect told this court in oral argument that in all likelihood he would advise appellant against appearing at the bench during voir dire for the reasons he gave this court. See *supra* note 2. Yet, exercise of this right is the specific basis of this court's remand.

The court now reverses appellant's conviction and remands for a new trial because the failure to participate at the bench during voir dire of prospective jurors " 'deprive[d] the proceeding of fundamental fairness' " in violation of the due process clause of the Fifth Amendment. The majority's presumptive analysis appears to contravene the case law on which it relies, for even if we conclude that the trial court's denial of appellant's request to be present at the bench during a voir dire questioning of prospective jurors constitutes a violation of our mandate in *Robinson and Boone,*[3] reversal of appellant's conviction is not automatic. Rather, we must determine whether such error was "harmless beyond a reasonable doubt" under the circumstances of this case. *Robinson, supra,* 448 A.2d at 856 (citations omitted); *see Gary v. United States,* 499 A.2d 815, 835 (D.C.1985) (en banc), *cert. denied,*

475 U.S. 1086, 106 S.Ct. 1470, 89 L.Ed.2d 725 (1986).

In determining whether the denial of a criminal defendant's request to be present at bench conferences to hear and observe voir dire questioning of prospective jurors was harmless beyond a reasonable doubt, this court has considered various factors, including (1) the extent of appellant's exclusion from the jury selection process, (2) the number of prospective jurors questioned by voir dire who ultimately served on the jury panel, and (3) whether the defendant had exhausted all of his peremptory strikes. *See Gary, supra,* 499 A.2d at 835; *Young v. United States,* 478 A.2d 287, 290–91 (D.C.1984). In this case, "[t]he court performed the [voir dire] questioning itself, *and then gave [standby counsel] time to relate to appellant the prospective juror's answers* ... [Furthermore] there were no restrictions [placed] on appellant" inhibiting his exercise of the defense strikes. (Emphasis added.) In fact, appellant decided that the use of one remaining peremptory challenge was not necessary. *Kleinbart II, supra,* 426 A.2d at 349. Only three of the veniremen questioned during the voir dire sat on the jury that found appellant guilty of murder. Appellant has made no particular showing of prejudice stemming from the participation of these three jurors. *See Young, supra,* 478 A.2d at 290.

In cases involving strikingly similar facts, which addressed the propriety of the voir dire procedure conducted in trials commenced *after* the *Robinson* rule was announced, we found the error of excluding a defendant from bench conferences at voir dire questioning to be harmless beyond a reasonable doubt. *See Gary, supra,* 499 A.2d at 835 (only two prospective jurors questioned at the bench actually served on panel, and defense counsel did not use one peremptory strike); *Young, supra,* 478 A.2d at 290–91 (only limited portion of entire voir dire was conducted at bench, only two prospective jurors so questioned served on panel, and defense counsel did not use one peremptory challenge). *See*

**3.** *Boone v. United States,* 483 A.2d 1135 (D.C. 1984) (en banc).

*also Washington, supra,* 227 U.S.App.D.C. at 193, 705 F.2d at 498 (limited portion of voir dire at bench, and the two jurors questioned at the bench who actually served on the jury were questioned before defense counsel requested defendant's presence at the bench).[4]

In the trial of this case, there were several eyewitnesses who saw appellant shoot and kill his victim at the corner of 8th and M Streets, N.W. *Kleinbart II, supra,* 426 A.2d at 346, 352. It is a "smoking gun" case. In fact, appellant never contended that he did not commit the crime. Rather, he asserted the defenses of accident, self-defense, or, in the alternative, insanity. *Id.* at 349–52. Yet, thirteen years later we are requiring a new trial though there is no indication of a miscarriage of justice. Considering all the circumstances, including the fact that witnesses observed appellant shoot and kill his victim, " 'we must conclude that there is no reasonable possibility that the error contributed in any way to appellant's conviction.' " *Gary, supra,* 499 A.2d at 835 (quoting *Young, supra,* 478 A.2d at 291). Comparing the strength of the government's case with the procedural error which occurred here, the error should be found to be harmless beyond a reasonable doubt.

Notwithstanding this evaluation, this case predictably may be utilized for the proposition that a prisoner who shows that he was deprived of the same right is entitled to release by collateral attack. If after these thirteen years of appeals and procedural motions this defendant is to obtain a new trial, there would appear to be little reason to distinguish in the future between direct appeal and collateral review;[5] nor to consider when the change of law occurred in relation to his trial and whether the issue here involves a "wellspring due process principle." *See Yates v. Aiken,* 484 U.S. 211, 108 S.Ct. 534, 538, 98 L.Ed.2d 546 (1988) (quoting *Francis v. Franklin,* 471 U.S. 307, 326–27, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985) (reaffirming rule of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)), which held that presumptions in the criminal law violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt).

**4.** *Cf. Beard v. United States,* 535 A.2d 1373, 1376–77 (D.C.1988) (error not harmless when the bulk of voir dire was conducted at the bench, half the actual jury panel questioned by voir dire at the bench, and defense counsel exercised all peremptory challenges).

**5.** In *Griffith, supra,* Justice White, in dissent, demonstrated the problems created by distinguishing direct appeals from collateral review of criminal convictions. Justice White stated:

The distinction between direct review and collateral attack *may bear some relationship to the recency of the crime;* thus, to the extent that *the difficulties presented by a new trial may be more severe when the underlying offense is more remote in time,* it may be that new trials would tend to be somewhat more burdensome in habeas cases than in cases involving reversals on direct appeal. However, this relationship is by no means direct, for the speed with which cases progress through the criminal justice system may vary widely. Thus, if the Court is truly concerned with treating like cases alike, it could accomplish its purpose far more precisely by applying new constitutional rules only to conduct of appropriately recent vintage. I assume, however, that no one would argue for an explicit "5-year rule" for example.

Of course, it will be less burdensome in the aggregate to apply [*Batson* ] only to cases pending when [*Batson* ] was decided than to give it full retroactive effect; by the same token, it would be less burdensome to apply [*Baston* ] retroactively to all cases involving defendants whose last names begin with the letter "S" than to make the decision fully retroactive. The majority obviously would not countenance the latter course, but its failure to identify any truly relevant distinction between cases on direct appeal and cases raising collateral challenges makes the rule it announces equally indefensible. *Shea v. Louisiana, supra,* 470 U.S. [51] at 64 n. 1, 105 S.Ct. [1065] at 1072, n. 1 [84 L.Ed.2d 38] (White, J., dissenting).

*Griffith, supra,* 107 S.Ct. at 719 n. 2 (White, J., dissenting) (emphasis added).

The logic of Justice White is applicable here, for the majority "fail[s] to identify any truly relevant distinction between [this case] and cases raising collateral challenges...." *Id.; cf. Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (holding that *Batson v. Kentucky* does not apply retroactively to cases on collateral review).

The underlying rationale of *Griffith* is that defendants similarly situated should be treated alike. The Court was considering a case pending on "direct review," and this factor was stated recurringly throughout its opinion. *See Griffith, supra,* 107 S.Ct. at 712–16. At the end of its opinion, the Court concluded that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases ... pending on direct review or not yet final." Thus, the Court one last time stated it was applying this rule to all cases "pending on direct review" and added, of course, "or not yet final," meaning, I believe, cases not having reached as far as the stage of "direct review," *viz.,* cases in the trial stage. It is apparent that if a defendant in the direct review stage is to get such benefits, a defendant who is still at the preceding trial court stage, and has not yet reached the appellate stage, should also benefit.

Interestingly, in an opinion subsequent to *Griffith, supra,* the Supreme Court stated:

We have already endorsed Justice Harlan's retroactivity analysis *for cases pending on direct appeal, see Griffith v. Kentucky,* 479 U.S. [314], 107 S.Ct. 708, 713 [93 L.Ed.2d 649] (1987); *United States v. Johnson,* 457 U.S. 537 [102 S.Ct. 2579, 73 L.Ed.2d 202] (1982), and we have noted, as Justice Harlan did, [*Mackey v. United States,* 401 U.S. 667, 682–87, 91 S.Ct. 1160, 1174–77, 28 L.Ed.2d 404 (1969) (Harlan, J., concurring in part and dissenting in part)]; *Desist v. United States,* 394 U.S. 244, 260 [89 S.Ct. 1030, 1039, 22 L.Ed.2d 248] (1969) (Harlan, J., dissenting), the important distinction between direct review and collateral review. Compare *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878 [92 L.Ed.2d 199] (1986) (holding that *Batson v. Kentucky,* 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (1986) does not apply retroactively to cases on collateral review), with *Griffith, supra,* 479 U.S. at [323], 107 S.Ct. at [714] (holding that *Batson* does apply retroactively to cases pending on direct review); *see e.g., Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, [1993, 95 L.Ed.2d 537] (1987)

(right to appointed counsel on direct appeal not applicable in collateral proceedings).

*Yates, supra,* 108 S.Ct. at 537 (emphasis supplied; citations omitted). This case is not actually at the direct review stage. This defendant had two direct reviews, the last being some seven years ago. *Kleinbart II, supra,* 426 A.2d 343. This case is analogous to a defendant long ago convicted, who attacks his conviction in a collateral proceeding claiming that under our decisions entered after his trial *and* direct appeals, constitutional error was committed. The majority here states that the error "cannot be harmless" as it "deprives the proceeding of fundamental fairness." In other words, the majority appears to be saying, necessarily, that we have here a fundamental "wellspring due process principle." *See Yates, supra,* 108 S.Ct. at 538. As discussed, *supra,* the majority's analysis appears to conflict with the precedents it relies upon, *e.g., Robinson, supra,* and *Boone, supra,* where a prejudicial error test was applied.

Apparently, this case is now at the stage in the trial court where all that remains is a determination, somehow, of the defendant's mental condition (sanity) at the time the offense was committed thirteen years ago. If he is declared to have been sane at the time he killed his victim, his judgment of conviction would be entered. If he is declared to have been insane, he would be found to be not guilty by reason of insanity. But, then, along comes the court's opinion in this case and a new trial must commence, assuming the government is able to produce sufficient evidence to go to trial. And, in a final touch of irony, even if there is a new trial, counsel for appellant has effectively told this court he would not want the defendant to approach the bench during any voir dire of prospective jurors because he considers this declared right as against the defendant's self-interest. See *supra,* note 2. Yet, that is the sole basis of this reversal.

I do not see a persuasive case here for ordering a new trial. I would conclude the

belatedly discovered error was harmless beyond a reasonable doubt.